## ADAMS *v.* CITY OF MILWAUKEE.

### ERROR TO THE SUPREME COURT OF THE STATE OF WISCONSIN.

No. 247.  Argued April 23, 1913.—Decided May 12, 1913.

The question whether a classification of milk vendors who produce their milk outside of the city to which they send milk deprives such producers of the equal protection of the law when there are different rules for vendors who produce their milk within the city limits has not been so far foreclosed by prior decisions of this court as to render its discussion unnecessary; and a motion to dismiss is denied.

Whether rules provided to be made by a police ordinance were properly promulgated and whether the officer promulgating them had authority so to do are not Federal questions.

Different situations of the objects regulated by a municipal ordinance may require different regulations.

A classification in a municipal ordinance by which vendors of milk drawn from cows outside the city are subjected to different regulations from those to which vendors of milk drawn from cows within the city, is not, provided, as in this case, the regulations are reasonable and proper, a denial of equal protection of the law guaranteed by the Fourteenth Amendment; and so *held* as to the milk ordinance of Milwaukee, Wisconsin.

The police power of the State is adequate to protect the people against the sale of impure food such as milk.

An ordinance regulating the sale of food products must be summarily enforced and the destruction of impure food, such as milk, is the only available and efficient penalty for its violations and does not deprive the owner of his property without due process of law; and so

*held* as to the milk ordinance of Milwaukee, Wisconsin. *Lieberman v. Van De Carr*, 199 U. S. 552.

This court does not pass upon questions before they have reached a justiciable stage.

As a provision in a municipal ordinance holding health officers enforcing it harmless for the destruction of offending property "if done in good faith" may be separable, this court will not determine whether it is an unconstitutional taking of property without due process of law in an action in which it appears that none of plaintiff's goods have been or could be destroyed before the state court has construed the statute in that respect.

144 Wisconsin, 371, affirmed.

THE facts, which involve the constitutionality under the due process and equal protection clauses of the Fourteenth Amendment, are stated in the opinion.

*Mr. Marcus A. Jacobson,* with whom *Mr. D. S. Tullar* was on the brief, for plaintiff in error:

The ordinance is class legislation and a violation of the Fourteenth Amendment.

When adopted and when it went into effect, there were no regulations in any way controlling the keeping of cows within the City of Milwaukee and the sale of milk from such cows except Ordinance No. 43, and the rules and regulations which the Health Commissioner had formulated under its authority some time subsequent to the beginning of this action and which, even if properly promulgated, were radically different from the restrictions regulating the selling of milk taken from cows outside of the City of Milwaukee.

The health officer is an administrative officer and has no power or authority to enact laws. See *Adams v. Burdge*, 95 Wisconsin, 390, which is practically conclusive that the health officer of the City of Milwaukee had no authority to formulate any rule requiring the application of the tuberculin test to cows kept within the City of

Milwaukee as a condition precedent to the issuance of a permit.

The health officer is a purely administrative officer who cannot enact new laws, and can only exercise reasonable discretion in the carrying out of ordinances which the common council, by virtue of its delegated police powers, does enact. *Potts* v. *Breen,* 167 Illinois, 67; *Dowling* v. *Lancashire Ins. Co.,* 92 Wisconsin, 63; *Hurst* v. *Warner,* 102 Michigan, 238; *Schaezlein* v. *Cabaniss,* 135 California, 466.

The conditions and penalties surrounding the keeping of cows and the sale of milk within the City of Milwaukee were radically different from those surrounding the keeping of cows outside thereof and the sale of milk from such cows within the city. *State ex rel. Greenwood* v. *Nolan,* 122 N. W. Rep. 255; *State* v. *Nelson,* 66 Minnesota, 166.

While the police powers of the State and of the municipality are very broad, in the exercise of such police powers the common council must be reasonable. *State* v. *Redmon,* 134 Wisconsin, 89; *Kellogg* v. *Currens,* 111 Wisconsin, 431.

The classification and distinction attempted in the Milwaukee milk ordinances are arbitrary, made for the purpose of discrimination only, and are entirely without reason or necessity so far as the accomplishment of the object or purpose in hand is concerned—that is, the prevention and spread of tuberculosis within the City of Milwaukee because of the sale of fresh milk.

The ordinance is void and unconstitutional and denies to the appellant and others similarly situated the equal protection of the law, first, because the Health Commissioner of the City of Milwaukee is an administrative officer and has no power or authority to formulate rules or regulations which in their nature are legislative; second, because, even though it be assumed for the sake of the argument that the Commissioner had such power, the same was not

properly exercised, but discriminations and differences relative to the regulations for the keeping of cows and the sale of milk within the city still exist, even though the rules formulated are valid and in full force and effect.

The ordinance is unconstitutional because § 24 authorizes the taking of private property without due process of law, contrary to the Fourteenth Amendment.

It is the declared intention of the defendants to confiscate and destroy all milk shipped to the City of Milwaukee by this plaintiff and others similarly situated where the cows from which such milk is drawn are not tuberculin tested, even though the plaintiff maintains a healthy herd of cattle, keeps his stables wholesome and clean and distributes pure and wholesome milk in the City of Milwaukee so far as he knows without the use of the tuberculin test.

Milk of this kind cannot be confiscated and destroyed simply because it is not accompanied with a certificate of a veterinary or of some person authorized by the Live Stock Sanitary Board of the State of Wisconsin, as provided by said ordinance, certifying that the tuberculin test has been applied. That part of the city ordinance which authorizes the confiscation and destruction of such milk as the court finds this plaintiff has been shipping, and desires to continue shipping, to Milwaukee, is unconstitutional and void. *Wilcox* v. *Hemming*, 58 Wisconsin, 148; *Gosselink* v. *Campbell*, 4 Iowa, 296.

The ordinance in question makes no provision for the assessment of damages for the destruction of the milk, and even goes so far as to provide that if said milk is destroyed under said ordinance, if done in good faith, the party destroying the same shall be held harmless in damage therefor in any suit or demand made. This particular portion is clearly unconstitutional and illegal. *Lowe* v. *Conroy*, 120 Wisconsin, 151. Nor is this frivolous. *Jacob-*

son v. *Massachusetts*, 197 U. S. 11, and *Lawton* v. *Steele*, 152 U. S. 136, distinguished.

We have no quarrel with that proposition, but submit that such authorities as have held that the municipal authorities may confiscate and destroy certain instrumentalities which have been put to illegal uses base their decisions upon the ground that, by statute or ordinance, such instrumentalities have been declared nuisances and may, therefore, be destroyed without hearing or notice. *Bittenhaus* v. *Johnston*, 92 Wisconsin, 588.

To destroy milk presumably pure and in good condition, without any declaration on the part of the legislature or the common council declaring the same to be a public nuisance, is a confiscation of property without due process of law. *Edson* v. *Crangle*, 62 Oh. St. 49; Note to *Daniels* v. *Homer*, 139 N. Car. 219. See also *McConnell* v. *McKillip*, 65 L. R. A. 610.

The confiscation and destruction of presumably pure and wholesome milk merely because the cows from which the same has been drawn were not tuberculin tested, without hearing or test or adjudication, is a taking of property without due process of law and a violation of the Constitution of the United States.

Mr. *Daniel W. Hoan*, with whom Mr. *John J. Cook* was on the brief, for defendants in error.

MR. JUSTICE McKENNA delivered the opinion of the court.

Error to review a judgment of the Supreme Court of Wisconsin sustaining the validity of an ordinance of the common council of the City of Milwaukee regulating the sale of milk.[1]

---

[1] No person shall bring into the City of Milwaukee for sale, either by wagon cart, train, or any other kind of vehicle, or keep, have or offer for sale, or sell, in said city, any milk or cream drawn from cows

The ordinance provides that no milk drawn from cows outside of the city shall be brought into the city, contained in cans, bottles or packages, unless they be marked with a legible stamp, tag or impression bearing the name and address of the owner of the cows and unless such owner shall, within one year from the passage of the ordinance, file in the office of the Commissioner of Health a certificate of a duly licensed veterinary surgeon or other person given authority by the State Livestock Sanitary Board to make

---

outside of said city, contained in cans, bottles or packages, unless such cans, bottles or other packages containing such milk or cream for sale, shall be marked with a legible stamp, tag or impression bearing the name of the owner of such cows from which such milk was drawn, giving his place of business, including name of city, street and number, or other proper address, and unless the owner or owners of such cows shall, within one year from the passage of this ordinance, file in the office of the Commissioner of Health a certificate of a duly licensed veterinary surgeon, or of any other person given authority by the State Livestock Sanitary Board to make tuberculin tests, stating that such cows have been tested with tuberculin and found free from tuberculosis or other contagious diseases. Such certificate shall give a number which has been permanently attached to each cow, and a description sufficiently accurate for identification, stating the date and place of such examination, and such certificate shall be good for one year from the date of its issuance. Such certificate, however, must be renewed annually and filed in the office of the Commissioner of Health, and each such certificate shall show in each case that the animals from which such milk was drawn are free from tuberculosis or other contagious diseases. All milk and cream from sick and diseased cows, or cows fed on refuse or slops from distilleries, or vinegar factories, unless such refuse or slops be mixed with other dry sanitary grain or food to a consistency of a thick mush, or other than good, wholesome food, or milk that is dangerous or that may affect or be detrimental to life or health, or that has been adulterated, or is below the standard fixed by § 17 of this chapter, or which does not conform to all other provisions of this chapter shall, upon discovery thereof, be confiscated, forfeited and immediately destroyed by or under the direction of the Commissioner of Health, bacteriologist, or officer detailed, who shall, if done in good faith, be held harmless in damage therefor, in any suit or demand made. Ordinance of March 30, 1908, § 24.

tuberculin tests, stating that such cows have been found free from tuberculosis or other contagious diseases. The certificate is required to give a number which has been permanently attached to each cow and a description sufficient for identification. The certificate must be renewed annually and must show that the cows are free from tuberculosis or other contagious diseases.

A short time before the ordinance was to go into effect this suit was brought against the city and Dr. Bading, its Health Commissioner, to restrain the enforcement of the ordinance. After a hearing judgment was entered dismissing the complaint, and the judgment was affirmed by the Supreme Court of the State.

The plaintiff (we shall so call him) alleged that he brought the suit for himself and all other producers of and dealers in pure, wholesome milk, as it involved a question of common interest to many persons. He alleged also the following: He is a farmer, living about seventeen miles from Milwaukee, and maintains a large dairy herd of cattle and is enjoying a profitable dairy business, shipping milk into Milwaukee to certain retail milk dealers in the city. His herd is healthy, so far as he is able to know or judge. He keeps his stables wholesome and clean, and if his cows become sick or affected in any way with any infectious or contagious disease, so far as he is able to learn or discover by giving careful attention to his herd in its feeding and care, he removes such animals immediately. So far as he is able to discover, his herd is absolutely free from disease, and the milk he offers for sale in Milwaukee, or will offer for sale, is and will be, so far as he is able to discover, absolutely pure and wholesome; and all that proves to be impure and unwholesome upon being tested in the usual and customary manner will be withdrawn from sale.

Bading, as Commissioner of Health of the City of Milwaukee, threatens, on and after April 1, 1909, to execute

the ordinance and confiscate, forfeit and destroy all milk shipped by plaintiff and other producers to be sold in Milwaukee contrary to the requirements of the ordinance, unless restrained; and if he does so irreparable injury will be caused plaintiff and such other producers and make their business of maintaining a dairy absolutely unprofitable as well as impracticable.

The tuberculin test required by the ordinance is, as plaintiff is informed and believes, wholly unreliable, untrustworthy and entirely worthless so far as being a guide or protection to the public as to whether or not the cows tested by it are free from the germs of tuberculosis or any other infectious disease.

The milk threatened to be confiscated, shipped to Milwaukee for sale by plaintiff and other producers, when pure and wholesome is not dangerous to public health because perchance the owners of the cows producing the milk have not had the cows tested or have failed to secure the certificate of a veterinary surgeon or other person as required by the ordinance.

It is alleged that the constitution of the State and the Fourteenth Amendment of the Constitution of the United States are violated.

A motion to dismiss is made on the ground that the questions in this case, under the decisions of this court, are so far foreclosed as to make their discussion unnecessary. The motion is overruled.

The particular contention of plaintiff is that the ordinance violates the Fourteenth Amendment to the Constitution of the United States because it discriminates between milk drawn from cows outside of Milwaukee and milk drawn from cows within the city. Therefore the charge is that the ordinance does not affect all persons alike. If we regard the territorial distinction merely, that is, milk from cows outside and milk from cows within the city, there is certainly no discrimination. All producers

outside of the city are treated alike. Plaintiff identifies himself in interest with all of them and sues for all of them. He therefore seeks grounds of comparison other than the locality of the dairies and urges that the discrimination exists in the difference between the tests to which cows kept outside of the city are subject and the test to which cows within the city are subject.

To sustain his contention plaintiff in error cites an ordinance of the city which provides that no cows or cattle shall be kept in the city without permit from the Commissioner of Health, except at places provided or established for purposes of slaughtering, and that the stables and places where such animals may be shall be kept at all times in a cleanly and wholesome condition and properly ventilated, and that no person shall allow any animal to be therein which is affected with any contagious and pestilential disease.

This ordinance was supplemented by various rules made by the Health Commissioner in regard to cleanliness of the stabling of the animals, keeping from them persons infected or who have been exposed to disease, requiring applications for permits to be accompanied by the certificate of the veterinary surgeon showing that the animals have been tested by the tuberculin test and shown by said test to be free from tuberculosis, and that they are not affected with any infectious or contagious disease. If the animals become subsequently infected they are to be removed from the city or disposed of in the manner provided by law.

Three contentions are, notwithstanding, made—(1) The rules were promulgated after this suit was begun. (2) The Commissioner had no authority to make the rules. (3) They are radically different rules from the rules as to cows kept outside of the city.

The third contention is the only one that involves a Federal question. The others involve local questions only,

and the Supreme Court of the State decided that the sale of milk drawn from diseased cows is forbidden within the city; that the health officer may remove a diseased animal to a place where it will not spread infection, and that he may apply any known test to determine whether the animal is afflicted with tuberculosis. Inspection and care, therefore, can be applied to the animals within the city, and it is applied also to the milk drawn from such animals. It cannot be applied to animals kept outside of the city. It can only be applied to the milk drawn from them. The court noticed this difference and the difference in the regulations made necessary by it. "There are brought into Milwaukee," the court said, "from outside of the city about 28,000 gallons of milk every day drawn from more than 10,000 cows. It would be practically impossible to subject this quantity of milk to a microscopic examination or to subject it to what is called in the evidence centrifugal test, which would also require the use of a microscope although not to the same extent. Each animal within the city can be subjected to an individual examination, a microscopic test of samples of its milk, an inspection as to its condition of health, and the tuberculin test applied directly under the orders of the Health Commissioner. This is a sufficient basis for separate legislation relating to milk shipped into the city. There are other regulations covering the sale of milk drawn from cows kept within the city."

We concur in the conclusion of the court. The different situations of the animals require different regulations. Cows kept outside of the city cannot be inspected by the health officers; they can be inspected by a licensed veterinary surgeon and a certificate of the fact and the identity of the cows and the milk authenticated as required by the ordinance. The requirements are not unreasonable; they are properly adaptive to the conditions. They are not discriminatory; they have proper relation to the pur-

pose to be accomplished. That purpose and the necessity for it we cannot question. *Jacobson* v. *Massachusetts*, 197 U. S. 11; *Laurel Hill Cemetery* v. *San Francisco*, 216 U. S. 358; *Mutual Loan Co.* v. *Martell*, 222 U. S. 225; *Purity Extract & Tonic Co.* v. *Lynch*, 226 U. S. 192; *Crossman* v. *Lurman*, 192 U. S. 189; *New Orleans Gas Light Co.* v. *Drainage Comm. of New Orleans*, 197 U. S. 453.

In *St. John* v. *New York*, 201 U. S. 633, we said that in considering the classification of a law, not only its final purpose must be regarded, but the means of its administration. The case is quite in point. There regulations were attacked as discriminating between producing and non-producing vendors of milk with a view to securing its freedom from adulteration; and adulterated milk was defined by law to be that to which something was added or from which the cream was removed or was naturally deficient or taken from cows fed on certain things or when in certain conditions. The regulations were directed to the inspection of samples of milk from the entire herd. A producing vendor could exempt himself from the penalties of the law by proving that his milk was in the same condition as when it left the herd. The non-producer had not that privilege. St. John, who was a non-producing vendor, offered to prove such fact as to the milk he offered for sale, but the proof was rejected and he was convicted of violating the law. The conviction was sustained against his attack of discrimination in the law. In that case, as in this, a disregard of the regulations was sought to be justified by the assertion of the purity of the milk offered for sale.

Plaintiff also contends that the provision of the ordinance which requires milk that does not conform to its requirements to be confiscated, forfeited and immediately destroyed, takes his property without due process of law.

To sustain his contention, he assumes the purity of his milk, though it has not been tuberculin tested, and then

asserts that "milk of this kind cannot be confiscated and destroyed simply because it is not accompanied with a certificate of a veterinary surgeon or of some person authorized by the Livestock Sanitary Board of the State of Wisconsin, as provided by said ordinance, certifying that the tuberculin test has been applied." But plaintiff overlooks the allegation of his complaint. His allegation is, not that his cows are free from infectious or contagious disease, but only "so far as he is able to learn or discover." And the allegation of his willingness to withdraw tainted milk from sale depends upon the same contingent knowledge or information. He overlooks also the findings of the courts against the sufficiency of his information and their demonstration of the necessity of the tests established by the ordinance. But even if the necessity of the tests be not demonstrated and the beliefs which induced them may be disputed, they cannot be pronounced illegal. In *Laurel Hill Cemetery* v. *San Francisco, supra*, we expressed the deference which must be accorded to local beliefs, saying that we would not overthrow an exercise of police power based on them to protect health merely because of our adherence to a contrary belief. It will be observed, therefore, that the contention of plaintiff is without foundation and that the ordinance is not an arbitrary and unreasonable deprivation of property in a wholesome food, but a regulation having the purpose of and found to be necessary for the protection of the public health.

The police power of the State must be declared adequate to such a desired purpose. It is a remedy made necessary by plaintiff acting in disregard of the other provisions of the ordinance, that is, failing to have his cows tested and their milk authenticated as prescribed. The city was surely not required to let the milk pass into consumption and spread its possible contagion. This seems to be the alternative for which plaintiff contends, and might occur. All milk produced outside of the city had amounted, the

Supreme Court said, to 3,500 eight-gallon cans daily. Criminal pains and penalties would not prevent the milk from going into consumption. To stop it at the boundaries of the city would be its practical destruction. To hold it there to await judicial proceedings against it would be, as the Supreme Court said, to leave it at the depots "reeking and rotting, a breeding place for pathogenic bacteria and insects during the period necessary for notice to the owner, and resort to judicial proceedings."

We agree with the court that the destruction of the milk was the only available and efficient penalty for the violation of the ordinance. The case, therefore, comes within the principle of the cases we have cited and of *Lieberman* v. *Van De Carr*, 199 U. S. 552. In other words, as the milk might be prohibited from being sold, at the discretion of the Board of Health, and even prohibited from entering the city (*Reid* v. *Colorado*, 187 U. S. 137), a violation of the conditions upon which it might be sold involves as a penalty its destruction. Plaintiff sets up his beliefs and judgment against those of government and attempts to defeat its regulations, and thereby makes himself and his property a violator of the law. In *North American Storage Co.* v. *Chicago*, 211 U. S. 306, 315, we said, by Mr. Justice Peckham, that food which is not fit to be eaten, "if kept for sale or in danger of being sold, is in itself a nuisance, and a nuisance of the most dangerous kind, involving, as it does, the health, if not the lives, of persons who may eat it." And it was decided that in such case the food could be seized and destroyed, and that a provision for a hearing before seizure and condemnation was not necessary. It was also decided that the owner of the food had his remedy against the arbitrary action of the health officers.

It is, however, said that plaintiff is precluded from such remedy because the ordinance expressly provides that the health officers "shall be held harmless in damages" for

their acts "if done in good faith." It may be that that portion of the ordinance is separable if invalid. The Supreme Court of the State said it was not necessary to pass upon the provision. What view it might entertain it did not clearly express. In determining the validity of the provision the court said that it "must assume that the ordinance is otherwise valid," and that it could not presume that plaintiff would disregard the ordinance held by it "to be valid or place his property in a condition to invite its destruction." "Self-inflicted damage," the court added, "is not recoverable. The open judicial inquiry is in such case: Was the damage self-inflicted?" In other words, as we understand the court, a question upon that portion of the ordinance has not yet reached a justiciable stage. There is certainly no destruction of the milk impending. Indeed, according to the allegations of the complaint, there is a threat only, to be executed if plaintiff should take milk into the city, which, though he alleges he is anxious to do, he may not do.

*Judgment affirmed.*