**CITY OF EL PASO et al. v. JACKSON et al.**

**No. 2586.**

Court of Civil Appeals of Texas. El Paso.

June 25, 1931.

Rehearing Denied July 9, 1931.

J. Walker Morrow and J. H. McBroom, City Atty., both of El Paso, for appellants.

Jones, Goldstein, Hardie & Grambling and Fryer & Cunningham, all of El Paso, for appellee.

PELPHREY, C. J.

On April 2, 1931, the council of El Paso, Tex., passed the following ordinance:

"Ordinance forbidding the sale, or offering for sale in the City of El Paso, of any any ice manufactured outside the City of El Paso, except ice manufactured wholly with distilled water, and declaring an emergency:

"Whereas the public health authorities of the City of El Paso are empowered within the City of El Paso to inspect the methods used in the manufacture and storage of ice, and to test the wells from which the water is obtained, and to supervise the sanitary methods surrounding the manufacture and storage thereof; and,

"Whereas, it is impracticable to inspect and test for purity, ice manufactured outside the City of El Paso.

"Now, Therefore, to guard the public health against typhoid fever and other diseases, the germs of which may be transmitted in ice, be it ordained by the City Council of the City of El Paso, Texas:

"Sec. 1: It shall be unlawful for any person, firm or corporation to sell or offer for sale, or distribute in the City of El Paso any ice manufactured outside the City of El Paso, except ice manufactured wholly with distilled water.

"Sec. 2: Any person violating the foregoing ordinance shall be deemed guilty of a misdemeanor, and shall be fined the sum of of $10.00, and each sale, or offering for sale shall constitute a separate offense.

"Sec. 3: There being no sufficient ordinance now forbidding or preventing the sale of impure ice within the City of El Paso, manufactured outside the City of El Paso, creates a case of great public emergency, necessitating the suspension of the rule requiring ordinances to be read in open meeting of the City Council at two regular meetings as provided in Sec. 33 of the Charter of the City, and for that reason said rule is hereby suspended by unanimous vote of the Aldermen present and with the consent of the Mayor, and this ordinance is hereby passed and approved, and takes effect from its passage, approval and publication."

Thereafter appellee Rudolph Jackson filed this suit against the city of El Paso, its mayor, its aldermen, its chief of police, and the judge of its corporation court, seeking to restrain them from enforcing or attempting to enforce said ordinance. Appellees E. T. and R. N. Anderson were allowed to intervene.

The cause was tried to the court and resulted in a judgment permanently enjoining the appellants from enforcing, or in any manner threatening to enforce, said ordinance.

This appeal is from such judgment.

### Opinion.

It is agreed by the parties to this appeal, that the trial court's action in holding the ordinance void was based upon his conclusion that it was discriminatory, and imposed a burden on interstate commerce.

Appellants contend that the trial court was in error in so concluding, and cite the case of Adams v. Milwaukee, 144 Wis. 371, 129 N. W. 518, 43 L. R. A. (N. S.) 1066, as supporting their position, while appellees assert the correctness of the judgment, and in support thereof cite Minnesota v. Barber, 136 U. S. 313, 10 S. Ct. 862, 34 L. Ed. 455.

We cannot agree that the case of Adams v. Milwaukee, supra, is in point. In that case the city council had concluded that milk from tubercular cows was injurious to the health of the citizens of Milwaukee, and had, therefore, prohibited the sale in the city of milk from cows which had not been given the tuberculin test. In the case at bar, the council has not decided that ice manufactured from raw water is injurious, and, from the fact that a major part of the ice manufac-

tured and sold within the city is made from raw water, we must conclude that they do not so consider it.

It appears to be well settled that states are clothed with plenary police power and large discretion in exercising that power for the protection of the public health, but that, in order to determine whether the act of the state is really a usurpation of power, the courts should look to the effect and operation of the law, and are not bound by mere form. In re Barber (O. C.) 39 F. 641; Mugler v. Kansas, 123 U. S. 623, 8 S. Ct. 273, 31 L. Ed. 205.

Therefore, in passing upon the ordinance here in question, we must look to its effect and operation, and are not bound by the recitals in the ordinance of its purpose, and the reasons for its enactment.

While there is some evidence in the record to the effect that the El Paso Ice & Refrigerator Company could manufacture ice from distilled water cheaper than the statement of the cost of manufacturing ice from raw water appearing in the record, there is ample evidence to the effect that the cost of making ice from distilled water is about 50 per cent. more than in making it from raw water.

The testimony on this point is corroborated by the fact that the record shows that the percentage of ice manufactured from distilled water has decreased from 51 per cent. in 1921, to 14 per cent. in 1929.

We, therefore, in considering the correctness of the action of the trial court, must presume he found the fact to be that it was more expensive to manufacture ice from distilled water than from raw water.

That being true, then what is the ultimate effect of the ordinance in question?

If ice can be manufactured of raw water in the city, and it costs 50 per cent. more to manufacture it from distilled water, then the enforcement of an ordinance which prohibits the sale of ice manufactured outside the city, unless made wholly from distilled water, could have but one practical result; a denial of the right of a citizen outside the city of El Paso to sell his ice therein. The Supreme Court of the United States in the case of State of Minnesota v. Barber, 136 U. S. 455, 10 S. Ct. 862, 865, 34 L. Ed. 455, held a statute of Minnesota void because the effect thereof was to deny to the citizens of other states the privilege of selling within the state of Minnesota certain meats slaughtered without the state. The statute in question prohibited the sale of meats in Minnesota, unless the animals from which the meat was taken had been inspected by a Minnesota inspector within twenty-four hours before it was slaughtered. The court said: "If the object of the statute had been to deny alto-

gether to the citizens of other states the privilege of selling, within the limits of Minnesota, for human food,. any fresh beef, veal, mutton, lamb, or pork from animals slaughtered outside of that state, and to compel the people of Minnesota wishing to buy such meats either to purchase those taken from animals inspected and slaughtered in the state, or to incur the cost of purchasing them, when desired for their own domestic use, at points beyond the state, that object is attained by the act in question."

What was there said will apply with equal force to the ordinance in question.

We have concluded that, under the facts in this record, the effect of the ordinance is to create a monopoly in favor of those manufacturing ice in the city; is an unreasonable discrimination against people living outside the city; and imposes a burden upon interstate commerce.

We do not wish to be understood as holding that the city of El Paso cannot fix a reasonable test to be applied to ice manufactured outside the city to insure its purity and wholesomeness.

The judgment of the trial court is affirmed.

HIGGINS, J. (dissenting).

I recognize that the proper disposition of the question at issue in this case is not free from doubt. Because of this uncertainty, it is with hesitation that I dissent from the ruling of the majority. However, I regard the ordinance in question as valid, and for this reason dissent, briefly stating the ground thereof.

The appellees are dealers in ice and desirous of purchasing ice manufactured in the city of Juarez, republic of Mexico, and marketing the same in the city of El Paso. The ice manufactured in Juarez is made from raw water. The record discloses that ice is a suitable agent to transmit the germs of typhoid fever and other diseases. It requires forty-eight hours to test ice for contamination. Within the city of El Paso the water, from which raw-water ice is manufactured, is tested by the city health department at intervals of not more than two weeks, and, when colon bacteria show up, prompt steps are taken to correct it. As a practical matter, it is impossible to test for contamination ice brought into the city from beyond its limits, for it takes forty-eight hours to make the test, and, if ice be held for that length of time at the city gates, it will melt. Distillation of the water from which ice is manufactured gives the assurance that it is free from contamination by disease-carrying germs. The city of El Paso has no way of enforcing periodic and proper inspection of the wells in Juarez from which the ice is manufactured which the appellees desire to market in El Paso.

Confronted with this situation, and resting under the obligation to protect the life and health of the residents of El Paso, the city passed the ordinance in question. The effect of this ordinance is to prohibit the sale within the city of ice manufactured outside the city of raw water.

In my opinion Adams v. Milwaukee, 228 U. S. 572, 33 S. Ct. 610, 57 L. Ed. 971, supports the view that the ordinance in question is a reasonable regulation to safeguard the life and health of the citizens of El Paso, against the danger of ice manufactured outside the city, from impure raw water. The ordinance is, therefore, a proper exercise of the police power, and valid.

I, therefore, dissent from the ruling of the majority.