CITY OF WASHBURN, Respondent, vs. ELLQUIST, Appellant.*

*March 9—April 13, 1943.*

* Motion for rehearing denied, with $25 costs, on June 15, 1943.

610

For the appellant there were briefs by *Walter T. Norlin* of Washburn, *Hayden C. Covington* of Brooklyn, New York, and *Roy A. Swayze* of Arlington, Virginia, and oral argument by *Mr. Norlin*.

For the respondent there was a brief by *C. F. Morris,* city attorney, and *William F. Morris* of De Pere, and oral argument by *William F. Morris*.

BARLOW, J. Appellant was ordained by the Watch Tower Bible and Tract Society, an organization for Jehovah's Witnesses, an evangelical group founded upon and drawing inspiration from the tenets of Christianity. Jehovah's Witnesses spread their teachings by distributing books and pamphlets by house to house visits. This appellant traveled from house to house offering books and pamphlets to the citizens of Washburn, requesting a contribution of from five cents to twenty-five cents, depending on whether a pamphlet or book was desired. In some instances, pamphlets or books are left without a contribution. The court found, and the evidence sustains the finding, that appellant was selling books and pamphlets.

Appellant contends that the ordinance in question, which is printed in the margin,[1] is void for the following reasons:

---

[1] ORDINANCE No. 139.

AN ORDINANCE TO REQUIRE NONRESIDENT SOLICITORS
TO REGISTER IN THE CITY OF WASHBURN.

The common council of the city of Washburn do ordain as follows:
Section 1. No person shall be allowed to travel from house to house soliciting business, taking orders for future delivery, soliciting donations for charities, soliciting subscriptions or engaging in any other business for any nonresident of the city of Washburn unless such person shall have first reported to the city clerk of said city his name, occupation, post-office address, and the name of his principal, if any, post-office address, the nature of the business to be carried on or represented or conducted by him in such detail as to indicate clearly the character of the business and the manner in which such business is proposed to be conducted.

(1) That it is in conflict with the provisions of the constitution of the United States and the constitution of the state of Wisconsin guaranteeing freedom of religion, freedom of speech, and freedom of the press; (2) that it is in conflict with the provisions of the constitution of the United States and the constitution of the state of Wisconsin guaranteeing equal protection of the law.

We are called upon to determine whether the right of a municipality to enact regulations in the interest of the public safety, health, welfare, or convenience, which is commonly known as a police regulation, has encroached upon individual liberties secured by the First and Fourteenth amendments of the United States constitution and the constitution of the state of Wisconsin.

In *Cantwell v. Connecticut,* 310 U. S. 296, 305, 60 Sup. Ct. 900, 84 L. Ed. 1213, the court said:

"The general regulation, in the public interest, of solicitation, which does not involve any religious test and does not unreasonably obstruct or delay the collection of funds, is not open to any constitutional objection, even though the collection be for a religious purpose."

Section 2. At the time of so reporting to the said city clerk, said city clerk shall issue to every such person a license or permit to carry on such business for such period of time as such applicant shall indicate as being necessary for said business not exceeding one (1) year from the date thereof and said city clerk shall enter in a book to be kept in his office for said purpose, all details of such applications above provided for, which said book shall be opened to the inspection of the public at all reasonable times.

Section 3. Any person who shall, without having first received such license or permit, or who shall knowingly make to said city clerk any false or untruthful statement regarding the same for the purpose of obtaining such license or permit, shall upon conviction thereof, be punished by a fine not exceeding ten ($10) dollars or by imprisonment in the county jail of Bayfield county until such time as such fine and costs are paid, not exceeding fifteen (15) days.

This ordinance shall be in force and take effect from and after its passage and publication.

Adopted August 5, 1940. Published August 8, 1940.

It is evident from the wording of the ordinance that the city authorities desire to have a record of persons representing nonresidents who may be in their city at any time traveling from house to house, including the purpose of their activity and whom they represent. It furnishes the authorities with necessary information to assist them in protecting the rights of the citizens of their community and to guard against the mischief to be apprehended and the difficulty in remedying such mischief. No information is required of the applicant which any city official would not have a right to demand of any stranger in a community who may be traveling from house to house. Appellant is a member of an evangelical group who spread their teachings by distributing books and pamphlets by house to house visits. Certainly they have no hesitancy about disclosing the purpose of their visits when they enter a home. It is a laudable purpose under their teaching. It is in accord with their method of enlightening the people as to the truths which they advocate. In place of having churches, as many religious organizations do, where people gather for religious purposes, Jehovah's Witnesses take their message directly to the people at their respective homes, or wherever they may find them.

We must construe the present ordinance in the light of these facts. How far can a municipality reach out and not violate the constitutional provision of freedom of the press and freedom of religion? Certainly no one would question the right of a city to require a religious organization to comply with reasonable building codes and zoning ordinances in the construction of a church building. Is there any more reason to question its right to require appellant to give his name, address, and to disclose the fact that he is distributing religious literature, when it is in the interest of the community that the proper authorities should have this information as to all persons representing nonresidents, who are traveling from house

to house? Where is the line of demarcation? There must be a line somewhere. The rights guaranteed under the constitutional amendments should be jealously protected, but at the same time due consideration must be given to the duty and obligation of municipalities to give proper protection to their citizens. It is conceivable that undesirable persons may enter communities and possibly represent themselves to be ordained by the Watch Tower Bible and Tract Society, and members of this society would justly resent this condition and would undoubtedly seek the assistance of law-enforcement authorities. Government and courts are necessary to protect the constitutional rights contended for by appellant. The rights of a municipality must also be protected by the same courts that protect the rights of this appellant.

In the ordinance under consideration, no discriminatory power is placed in the hands of public officials, no fee or tax is demanded, no religious tests are involved, and it does not unreasonably obstruct or delay the activity of appellant. Many cases have turned on the point that the granting or withholding of permits was left in the discretion of the municipal officials. These ordinances have been uniformly held unconstitutional, as a violation of the right of free speech and freedom of religion. *Largent v. Texas,* 318 U. S. 000, 63 Sup. Ct. 667, 87 L. Ed. 000; *Cantwell v. Connecticut, supra; Lovell v. Griffin,* 303 U. S. 444, 58 Sup. Ct. 666, 82 L. Ed. 949.

This question is not present in the case under consideration. The ordinance specifically provides that "at the time of so reporting to the city clerk, said clerk shall issue to every such person a license or permit." The duty of the public official is mandatory; he has no power of discrimination; he performs a ministerial act, and the argument of appellant that the official may refuse to issue the permit, thus requiring applicant to resort to the courts, is too remote and speculative to give it serious consideration. In considering this ordinance, or any

ordinance or statute charging public officials with a ministerial duty, we have the right to assume, and do assume, that such officials will perform the duties with which they are charged.

The United States supreme court clearly states the principle which is the basis of the determination of this case in *Schneider v. State,* 308 U. S. 147, 161, 60 Sup. Ct. 146, 84 L. Ed. 155, as follows:

"And so, as cases arise, the delicate and difficult task falls upon the courts to weigh the circumstances and to appraise the substantiality of the reasons advanced in support of the regulation of the free enjoyment of the rights."

This court is fully aware of the sacredness and the importance of the constitutional right of free speech, freedom of the press, and freedom of religion guaranteed by the constitution of the United States and the constitution of the state of Wisconsin, but in the ordinance under consideration we find no controlling or discriminatory power vested in the hands of public officials, no fee or tax demanded, no religious tests involved, and it does not necessarily obstruct or delay the activity of anyone. We conclude that it does not violate any of these rights.

The next question raised is whether this ordinance discriminates in favor of merchants in the city of Washburn and against nonresidents. The ordinance requires every person to register, whether he is a resident of the city of Washburn or a nonresident; if he is traveling from house to house, representing a nonresident of Washburn, for any purpose set forth in the ordinance. It is contended that this ordinance grants special rights and privileges to local merchants as distinguished from nonresident merchants. Many cases are cited, and special reference is made to *Whipple v. South Milwaukee,* 218 Wis. 395, 261 N. W. 235, and *Edgerton v. Slatter,* 219 Wis. 381, 263 N. W. 83:

An examination of these cases discloses the fact that a tax or license fee was exacted. In *Wisconsin Asso. of Master Bakers v. Weigle,* 167 Wis. 569, 575, 168 N. W. 383, the court stated in simple language the rule applied to cases where ordinances were held to be discriminatory, as follows:

"It is argued that, even if the classification be upheld, the exemption of part of the licensed class from the payment of any license fee is discriminatory. This contention is sound and rests upon the most elementary principles."

If the ordinance before us required payment of a tax or license fee by a portion of the class only, it would come within the rule of the cases cited, but in the instant case no tax or fee is required. All persons in the classification are treated alike. The representative is merely required to furnish simple information, which cannot be attacked as unreasonable. It is purely a police regulation to provide information to the city officials of the name of the person who might be traveling from house to house, and the name and address of the non-resident they represent.

In *Servonitz v. State,* 133 Wis. 231, 239, 113 N. W. 277, the court said:

"In considering the subject we must bear in mind that the policy of classification is a matter wholly within legislative discretion, and that whether there is room for the classification made in any given case is primarily a legislative question and can never become a judicial one except for the purpose of determining, in any given situation, whether legislative action passed the boundaries of reason, reasonable doubts to be resolved in the negative."

In *Adams v. Milwaukee,* 144 Wis. 371, 129 N. W. 518, affirmed 228 U. S. 572, 33 Sup. Ct. 610, 57 L. Ed. 971, a municipal ordinance was sustained as a proper classification where vendors of milk from cows outside the city were sub-

jected to different regulations from those of vendors of milk drawn from cows within the city. The regulations were considered reasonable and proper.

It can be argued that this places a burden on nonresident merchants which is not placed on local merchants. Again we are called upon to determine where the rights of police regulations end and where unlawful discrimination begins. When we say that a law or ordinance must be general, we do not mean that its ultimate effect on everyone is going to be the same. The present ordinance requires citizens of the city of Washburn as well as a citizen who is a nonresident to register if he desires to travel from house to house for any purpose set forth in the ordinance. Likewise, a nonresident is not required to register if he travels from house to house for a local merchant. We have no difficulty in justifying this classification. It applies to all alike under the specific classification. It is not an unreasonable burden on the class that is created. It is a proper classification and does not violate the constitution of the United States or the constitution of the state of Wisconsin.

*By the Court.*—Judgment affirmed.

The following memorandum was filed June 15, 1943:

BARLOW, J. (*on motion for rehearing*). In the case of *Murdock v. Pennsylvania*, 318 U. S. 000, 63 Sup. Ct. 870, 87 L. Ed. 000, decided by the supreme court of the United States on May 3, 1943, the court considered a peddler's license ordinance which provided for the payment of a license fee or tax, and used the following language:

"In that case, as in the present ones, we have something very different from a registration system under which those going from house to house are required to give their names, addresses and other marks of identification to the authorities. In all of these cases the issuance of the permit or license is dependent on the payment of a license tax."

And again, in this same opinion, the court said:

"As we have said, it is not merely a registration ordinance calling for an identification of the solicitors so as to give the authorities some basis for investigating strangers coming into the community."

The ordinance in the present case meets every requirement of this language. We see no reason for granting the motion for rehearing.

*By the Court.*—Motion denied.