**The SUNDAY MAIL, INC., a Corporation, et al., Plaintiffs,**

**v.**

**Jerry F. CHRISTIE et al., Defendants.**

**No. 69-2495.**

United States District Court, C. D. California.

March 2, 1970.

Lawton, Christensen, Flynn, Fazio, & McDonnell, by Louis L. Selby, La Habra, Cal., for plaintiffs.

D. Reginald Gustaveson, City Atty., Fullerton, Cal., for defendants.

## ORDER DENYING RELIEF AND DISMISSING ACTION

WHELAN, District Judge.

This is an action in which plaintiffs seek injunctive relief and a declaratory judgment that Section 7.30.020 of Fullerton City Ordinance No. 1635 is unconstitutional.

Plaintiff The Sunday Mail, Inc., a corporation, is engaged in the business of publishing and circulating to the general public residing in the City of Fullerton a news magazine entitled Tempo The Sunday Journal. The plaintiffs Ramiro Gaez and Tusik Yza are engaged in the business of distributing and circulating respectively said news magazine and sue

as representatives of the classes of distributors and carriers.

Plaintiffs' complaint alleges that the defendants, the members of the City Council of Fullerton, have enacted a City Ordinance, No. 1635, a copy of which is attached to the complaint as Exhibit A, which provides in Section 7.30.020, "It shall be unlawful for any person to distribute, cast, throw or otherwise place any newspaper, magazine, handbill, pamphlet, circular, dodger or any other paper on any private residential property in the City without the express consent of the owner, or of an adult occupant, thereof, or of a person authorized by such owner or occupant to give such consent." The complaint further alleges that the plaintiffs make deliveries of the Tempo The Sunday Journal to residences without obtaining advance express consent of the owner, and that the defendants, the Chief of Police of Fullerton and the City Attorney thereof, have repeatedly threatened plaintiffs with multiple arrests and prosecutions for each act of delivering said news magazine to residences without obtaining advance express consent of the owners, occupants, or agents thereof.

Plaintiffs sought a temporary restraining order restraining the defendants from enforcing Section 7.30.020 of Ordinance No. 1635 by arrest and prosecution of the plaintiffs. No temporary restraining order issued but by stipulation of counsel the ordinance has not been enforced pending the disposition of plaintiffs' motion for a preliminary injunction. No arrests have yet been made and consequently no prosecutions for violation of the ordinance have been commenced. By written stipulation of counsel the hearing on the application for the preliminary injunction was consolidated with a trial on the merits, and the evidence, affidavits and written and oral argument submitted on the application for the temporary injunction were stipulated admissible on the trial on the merits and submitted thereon. The hearing and trial took place on January 12, 1970, and the cause has been submitted for decision.

Plaintiffs did not pursue their claim that this is a class action so that for all purposes it is determined that this is not a class action.

Plaintiffs contend that Section 7.30.-020 of the ordinance is void upon its face and seek declaratory relief from this Court declaring that section of the ordinance unconstitutional as violative of the First and Fourteenth Amendments of the United States Constitution.

## FACTS

Tempo The Sunday Journal is a weekly family news magazine which is and has been distributed throughout Orange County, including the City of Fullerton, each Sunday since November 2, 1969. It is distributed free of charge to its recipients, the cost of publication and distribution being paid entirely by advertising revenues. This, plaintiff corporation's magazine, does not qualify for the low second-class mailing rate and would be required to use the higher third-class rate were the distribution to be done via the U. S. mails. The ordinance sought to be declared unconstitutional was passed by the City Council on November 18, 1969, and became effective on December 19, 1969. Plaintiff corporation argues that compliance with the ordinance would be extremely costly in terms of money to it. Plaintiffs contend that to secure advance consent would be too expensive for them to continue to distribute the free news magazine. Plaintiffs further state that when advised by a resident that the resident does not want delivery, the distributors are instructed to cease delivery, and also to cease delivery in the case of a residence where there is apparently no occupant, as where residents are on vacation. The defendants, on the other hand, have submitted affidavits of residents of Fullerton that despite written requests made to plaintiffs to cease distribution of the news magazine, deliveries continued to them.

## THE DOCTRINE OF ABSTENTION SHOULD APPLY TO THE REQUEST FOR AN INJUNCTION

■ This Court in its exercise of sound judicial discretion and in furtherance of the doctrine of abstention concludes that the extraordinary relief of injunction sought by plaintiffs herein is not warranted in this case. "Federal interference with a State's good-faith administration of its criminal laws 'is peculiarly inconsistent with our federal framework' and a showing of 'special circumstances' beyond the injury incidental to every proceeding brought lawfully and in good faith is requisite to a finding of irreparable injury sufficient to justify the extraordinary remedy of an injunction." Cameron v. Johnson, 390 U.S. 611, 618, 88 S.Ct. 1335, 1339, 20 L.Ed.2d 182 (1968); Zwickler v. Koota, 389 U.S. 241, 88 S.Ct. 391, 19 L.Ed.2d 444 (1967); Douglas v. City of Jeannette, 319 U.S. 157, 162, 63 S.Ct. 877, 87 L.Ed. 1324 (1942). There has been no showing of bad faith in the enforcement of the ordinance, which this Court notes is sufficiently narrowly drawn to indicate clearly what conduct constitutes a violation, to bring this case into a situation such as in Dombrowski v. Pfister, 380 U.S. 479, 85 S.Ct. 1116, 14 L.Ed.2d 22 (1965), where the Supreme Court found that the oppression of the complainants was sufficient to compel federal action. This is therefore not a case in which " * * * a federal court of equity by withdrawing the determination of guilt from the state courts could rightly afford [plaintiffs] any protection which they could not secure by prompt trial and appeal pursued to" the Supreme Court. Cameron v. Johnson, *supra*, 390 U.S. at p. 620, 88 S.Ct. 1335 at p. 1340, quoting Douglas v. City of Jeannette, *supra*, 319 U.S. at p. 164, 63 S.Ct. 877.

## APPROPRIATENESS OF DECLARATORY RELIEF

However, even though the Court should abstain with respect to the injunctive relief sought, it is incumbent upon this Court to decide the appropriateness of considering declaratory relief in the circumstances of this case, and to consider the constitutionality of the ordinance in the event that the Court decides that it is appropriate to determine whether or not plaintiffs are entitled to a declaration as to the constitutionality of the ordinance. The Supreme Court in Zwickler v. Koota, 389 U.S. 241 (1967), at p. 254, 88 S.Ct. 391 at p. 399 said, "For a request for a declaratory judgment that a state statute is overbroad on its face must be considered independently of any request for injunctive relief against the enforcement of that statute. We hold that a federal district court has the duty to decide the appropriateness and merits of the declaratory requests irrespective of its conclusion as to the propriety of the issuance of the injunction."

■ The Supreme Court, as it would appear, has already determined that an ordinance with provisions similar in legal effect to the provisions of the ordinance here attacked is constitutional. Breard v. Alexandria, 341 U.S. 622, 71 S.Ct. 920, 95 L.Ed. 1233 (1951). The provisions of the ordinance attacked by plaintiffs are not unconstitutional on their face. "The First and Fourteenth Amendments have never been treated as absolutes. Freedom of speech or press does not mean that one can talk or distribute where, when and how one chooses. Rights other than those of the advocates are involved. By adjustment of rights, we can have both full liberty of expression and an orderly life." Breard v. Alexandria, *supra*, at p. 642, 71 S.Ct. at p. 932. In the *Breard* case the U. S. Supreme Court held constitutional a municipal ordinance which forbade one to go in and upon private residential property for the purpose of soliciting orders for the sale of goods (in that case subscriptions to magazines and periodicals) without prior consent of the owners or occupants. The appellant was convicted of a violation of the ordinance solely because he had not obtained the prior consent of the owners or occupants of the residences he solicited. The court held that the ordinance was not invalid under

the Due Process Clause of the Fourteenth Amendment, and that it did not abridge the freedom of speech and press guaranteed by the First and Fourteenth Amendments. The following statement of the applicable principle of law by the Supreme Court therein seems appropriate in this case. "This makes the constitutionality of Alexandria's ordinance turn upon a balancing of the conveniences between some householders' desire for privacy and the publisher's right to distribute publications in the precise way that those soliciting for him think brings the best results. The issue brings into collision the rights of the hospitable housewife, peering on Monday morning around her chained door with those of Mr. Breard's courteous, well-trained but possibly persistent solicitor, offering a bargain on culture and information through a joint subscription to the Saturday Evening Post, Pic and Today's Woman. Behind the housewife are many housewives and home-owners in the towns where Green River ordinances offer their aid. Behind Mr. Breard are 'Keystone' with an annual business of $5,000,000 in subscriptions and the periodicals with their use of house-to-house canvassing to secure subscribers for their valuable publications, together with other housewives who desire solicitors to offer them the opportunity and remind and help them, at their doors, to subscribe for publications.

"Subscriptions may be made by anyone interested in receiving the magazines without the annoyances of house-to-house canvassing. We think those communities that have found these methods of sale obnoxious may control them by ordinance. It would be, it seems to us, a misuse of the great guarantees of free speech and free press to use those guarantees to force a community to admit the solicitors of publications to the home premises of its residents. We see no abridgment of the principles of the First Amendment in this ordinance." Breard v. Alexandria, *supra*, at p. 644, 645, 71 S.Ct. at pp. 932–933.[1] As the court in the Breard case distinguished the cases of Martin v. City of Struthers, 319 U.S. 141, 63 S.Ct. 862, 87 L.Ed. 1313 (1943); Marsh v. Alabama, 326 U.S. 501, 66 S.Ct. 276, 90 L.Ed. 265 (1946); and Tucker v. Texas, 326 U.S. 517, 66 S.Ct. 274, 90 L.Ed. 274 (1946), this Court does also.

As with respect to the ordinance in *Breard*, there is in the case of the Fullerton ordinance in question an appropriate exercise of police power. In substance, the purpose of that part of the ordinance here assailed, which purpose is set forth in the quoted portion of the ordinance set forth in note 2 below, is as follows[2]:

1. Section 7.30.020 of Fullerton Municipal Ordinance No. 1635 appears to be even less restrictive than the Alexandria ordinance of the *Breard* case. In *Breard* any door-to-door soliciting was forbidden without the consent of the occupant, whereas here there is no prohibition against door-to-door solicitation of consents for deposit of literature. In the *Breard* case one could not gain consent through summoning the occupant to the door; here it is only the depositing of unsolicited material upon the private property of one who has not given his consent thereto which is prohibited.

2. "That the practice of distributing, casting, throwing, and otherwise placing, newspapers, magazines, handbills and other papers on private residential property without the express consent of the owner, or of an adult occupant, thereof, or of a person authorized by such owner or occupant to give such consent, creates a serious police problem and a threat to the public safety and welfare in that the owners and occupants of such property are unaware that such material is going to be thrown or placed thereon and are therefore unable to make proper, or any, provision to prevent the throwing or placing of such material thereon with the result that, without their prior knowledge or any consent and against their wishes, such property will be cluttered with an accumulation of such material and their absence will be thereby inadvertently advertised to persons of dissolute or criminal propensities and the probability of criminal activities on such property will be thereby increased so that more intensified police patrolling of such property will then be necessary, all of which is detrimental to the peace, safety and welfare of the public."

That the unauthorized depositing of literature on private property creates a serious police problem in that occupants of such property are unable to control such unauthorized depositing and the accumulation thereof is an advertisement to the criminally inclined that the property is unoccupied, and the increased probability of criminality requires additional police patrolling, all of which is detrimental to the welfare of the public.

Murdock v. Pennsylvania, 319 U.S. 105, 63 S.Ct. 870, 87 L.Ed. 1292 (1942), and other cases concerned with the same factual situation as found in *Murdock*, which strike down ordinances which require the securing of a license and payment of a tax prior to canvassing for or soliciting for orders for goods of any kind, are clearly distinguishable. In the instant case no licensing authority determines who may distribute literature on private property, for that decision is left to the individual to grant or withhold consent. Follett v. Town of McCormick, 321 U.S. 573, 576–577, 64 S.Ct. 717, 88 L.Ed. 938 (1944); Largent v. Texas, 318 U.S. 418, 63 S.Ct. 667, 87 L.Ed. 873 (1943); Cantwell v. Connecticut, 310 U.S. 296, 306, 60 S.Ct. 900, 84 L.Ed. 1213 (1940); Schneider v. State of New Jersey, 308 U.S. 147, 157, 163–164, 60 S.Ct. 146, 84 L.Ed. 155 (1939); Lovell v. City of Griffin, 303 U.S. 444, 58 S.Ct. 666, 82 L.Ed. 949 (1938); Grosjean v. American Press Co., 297 U.S. 233, 244–248, 56 S.Ct. 444, 80 L.Ed. 660 (1936), are all cases where the statute involved was found unconstitutional because of a requirement of the issuance of a permit or license or payment of a license tax.

Martin v. City of Struthers, 319 U.S. 141, 63 S.Ct. 862, 87 L.Ed. 1313 (1943), is likewise distinguishable. There the Supreme Court held invalid as a denial of freedom of speech and press an ordinance which forbade any person to knock on doors, ring doorbells, or otherwise summon to the door the occupants of any residence for the purpose of distributing handbills as applied to a person distributing advertisements for a religious meeting. In that case the court said at pp. 143–144, 63 S.Ct. at p. 863, "The ordinance does not control anything but the distribution of literature, and in that respect it substitutes the judgment of the community for the judgment of the individual householder." The court pointed out at pp. 146–147, 63 S.Ct. at p. 865 that the "[f]reedom to distribute information to every citizen wherever he desires to receive it * * * must be fully preserved." Clearly the ordinance here in issue does not substitute the judgment of the community, and the distribution of plaintiff's paper may be made to every citizen who expresses a desire to receive it by the giving of consent to the delivery on his property.

Marsh v. Alabama, 326 U.S. 501, 66 S.Ct. 276, 90 L.Ed. 265 (1946), is not applicable to the question presented herein. There the court held that a state could not impose criminal punishment on a person for distributing religious literature on the sidewalk of a company-owned town contrary to regulations of the town's management. The court said there that since the town and its shopping district were freely accessible to and freely used by the public in general, its streets were in the same legal position as public streets and other public places in a municipality. Following the reasoning of Lovell v. Griffin, 303 U.S. 444, 58 S.Ct. 666, 82 L.Ed. 949 (1938), the Supreme Court in *Marsh* held that the distribution of pamphlets and ideas could not be prohibited on such "quasi" public streets. However, it was the public nature of the streets which formed the basis for the holding that the appellant was free to engage in such practices on such streets without becoming a trespasser on the company's property.

Similarly, in Tucker v. Texas, 326 U.S. 517, 66 S.Ct. 274, 90 L.Ed. 274 (1946), the Supreme Court found that in a village owned by the United States, where the village was freely accessible and open to the public and had all the characteristics of a typical American town, a minister of the group known as Jehovah's Witnesses was free to make calls on peo-

ple and present his religious views to those willing to receive it, and that the manager of the Federal Public Housing Authority could not, under a Texas statute making it an offense for any peddler of goods to willfully refuse to leave premises after being notified to do so by the owner, order the minister to leave the village and discontinue all religious activities anywhere in the village. Again the court found that the public nature of the village prohibited the "owner" thereof from denying appellant his liberties protected by the Constitution. The court in Tucker v. Texas was not concerned with the issue which is presented in this case.

The question of the constitutionality of Section 7.30.030 of Fullerton Ordinance No. 1635 is not presented herein and the Court does not rule thereon. Section 7.30.030 provides, "It shall be unlawful for any person to distribute, cast, throw or scatter any newspaper, magazine, handbill, pamphlet, circular, dodger, announcement, or any other paper or in any vehicle or on any public property, or on any parking lot open to the use of the public, in any manner other than by the delivery thereof to any person who then and there accepts the same or has given his express consent to the receipt thereof." It appears that the constitutionality of that section of the ordinance is subject to attack on the basis of numerous Supreme Court cases. Schneider v. State, 308 U.S. 147, 162, 60 S.Ct. 146, 84 L.Ed. 155; Marsh v. Alabama, 326 U.S. 501, 66 S.Ct. 276, 90 L.Ed. 265; and Tucker v. Texas, 326 U.S. 517, 66 S.Ct. 274, 90 L.Ed. 274. However, we are concerned here only with the constitutionality of that part of the ordinance, to wit, Section 7.30.020, attacked by plaintiffs.

Thus, after careful consideration of the facts and law, this Court feels compelled, under the holding of Breard v. Alexandria, *supra*, to uphold the constitutionality of Section 7.30.020 of Ordinance No. 1635 of the City of Fullerton, California.

The foregoing constitutes the findings of fact and conclusions of law of the Court. Judgment shall be given in accordance herewith, but shall not be entered until a formal judgment is signed by the Court.