BOROUGH OF COLLINGSWOOD, PLAINTIFF-RESPONDENT, v. DONALD RINGGOLD AND JOHN C. ASHHURST, DEFENDANTS-APPELLANTS.

Argued November 20, 1973—Decided January 24, 1975.

*Mr. Emanuel Greenberg,* of the New York bar, argued the cause for defendants-appellants (*Mr. Bryan B. McKernan,* attorney).

*Mr. James A. Perrin,* Municipal Prosecutor, argued the cause for plaintiff-respondent.

The opinion of the court was delivered by

CLIFFORD, J. The issue raised by this appeal is the constitutionality of the Borough of Collingswood's Ordinance No. 601, prohibiting canvassing or soliciting without first registering with the Chief of Police and procuring a permit.

In the municipal court defendants were convicted of violating the ordinance in question. The Camden County Court, in a *de novo* hearing on the record pursuant to *R.* 3:23–8(a), upheld the convictions, concluding that the ordinance was valid "both generally and as applied to these defendants." In an unreported *per curiam* opinion the Appellate Division affirmed for the reasons stated by the County Court. A substantial constitutional question having been raised, the appeal to this Court is as of right, *R.* 2:2–1(a)(1). We affirm.

Defendants were employed by a Pennsylvania subcontractor of Surveys Unlimited, a New York corporation, for the purpose of surveying listener preferences for radio stations. At approximately 9:30 P.M. on the evening of March 16, 1970, they went to the Parkview Apartments in Collingswood to interview residents there. They had not obtained a permit as required by the ordinance.

Mrs. Jeanne Powell, a resident of the Parkview Apartments, agreed to be interviewed. After answering a number of questions relating to radio station, television channel, newspaper and and coffee preferences, she became suspicious in light of the many inquiries concerning the times when she viewed or listened to programs. When the interviewer, defendant Ringgold, asked for her telephone number, her suspicions increased and she refused to provide it. The interview took place at the door to the Powell apartment and lasted about 15 minutes. During this time Mrs. Powell noticed a second man going from door to door in the building. Despite Mrs. Powell's suspicions, it is not argued here that the interview was anything but courteous, nor that defendants were attempting to sell anything, nor that they were carrying out any criminal or fraudulent schemes.

However, when Ringgold completed his interview and departed, Mrs. Powell called the police who quickly located defendants outside the apartment building. Upon being questioned by the police, defendants explained what they were doing and admitted having no permit, saying that they had been unaware of the permit requirement. They were then charged with the violation forming the basis of these proceedings.

The relevant ordinance reads in pertinent part as follows:

Section 1. No person except as provided herein shall canvass, solicit, distribute circulars or other matter, or call from door to door, or place to place, in the Borough of Collingswood without first registering with the Chief of Police, or in his absence, the officer in charge of the police department.

Section 2. * * * For the purpose of this ordinance a canvasser or solicitor shall also be deemed to be one who is not in the business of selling goods, but one who makes surveys for research purposes, analysis, opinion polls, rating data and any such similar work by which of its nature involves a door to door, or place to place activity, and shall include persons going from door to door or place to place for the purpose of contributions, donations, or alms, for any persons or organization.

Section 3. The purpose of this ordinance is to prevent fraud, crime and unethical and dishonest business practices, and for the general

356

protection, health and welfare of the residents of the Borough of Collingswood.

Section 4. Each registrant shall, at the time of registering, file with the Chief of Police, an application in writing which shall give the following information:

(a) Name, age and physical description of applicant.

(b) Complete permanent home and local address of applicant.

(c) Name and address of the organization or person for whom solicitation is being made.

(d) Description of the nature of the business and the goods, services, or wares to be sold, and sufficient information to determine whether or not the business he is to transact is interstate or intrastate commerce.

(e) Two (2) photographs of the applicant which shall be approximately 2½ inches by 2½ inches in size showing the head and shoulders of the applicant in a clear and distinguishing manner.

(f) The days, dates, and route of his business in the Borough of Collingswood (which shall be between the hours of 9:00 A.M. and 5:00 P.M.).

(g) A statement as to whether or not the applicant has been convicted of a crime, misdemeanor, or disorderly conduct offense, where and when so convicted, the nature of the offense and the penalty, if any.

(h) The make, model, year, color and license plate number of automobiles used by the applicant during the period of solicitation within the Borough, and the number of his driver's license and the state of issuance.

\* \* \* \* \* \* \* \*

Section 7. Each registrant shall carry the registration certificate at all times when in the Borough, and shall exhibit it to any citizen or police officer upon request. At the conclusion of each day's canvassing or soliciting the registration card shall be deposited with the Chief of Police.

Section 8. In the event an application for canvassing or soliciting is disapproved to [sic] the Chief of Police, for reasons of reported unethical business practices, or a previous conviction for a crime, the applicant may appeal to the Borough Commissioners, who shall set a time and place for a hearing, which hearing shall be held within ten days after appeal is taken by applicant, at which hearing applicant will be given an opportunity to present his reasons why the license should be issued. The decisions of the Borough Commissioners shall be final.

Section 9. \* \* \* (b) No person subject to the provisions of this ordinance shall canvass, solicit or distribute circulars or other matter except during the hours of 9:00 A.M. and 5:00 P.M. Monday through Saturdays.

Section 10. Any person, organization or society or association of a charitable religious, patriotic, philanthropic or community nature

desiring to solicit or have solcited [sic] in its name money, property or financial assistance for which no merchandise, wares or services are required shall be exempt from Section 4 of this ordinance provided there s[sic] filed with the Chief of Police an application in writing giving the following information:

(1) Names of solicitors, and purpose or cause for which solicitation is being made.

(2) Names and addresses of the officers of the organization.

(3) Names and addresses of the agents or representatives who will solicit, canvass or distribute literature in the Borough.

(B) Each solicitor for such organization, society, or association shall carry proper identification, and shall display same upon request.

\*    \*    \*    \*    \*    \*    \*    \*

Section 12. Any part or parts of this ordinance, if ever declared to be invalid, shall in no way or manner affect the validity of all remaining part, or parts of this ordinance, which shall continue in full force and effect.

Defendants challenge the ordinance on four constitutional grounds: (1) it is an invalid exercise of the police power as applied to them; (2) it imposes an undue burden on interstate commerce; (3) it abridges the First Amendment freedoms of speech and assembly; and (4) insofar as it sets different requirements for survey researohers from those for charitable, religious, civic and political organizations, it violates the equal protection clause of the Fourteenth Amendment.

We take up these contentions in that order. Our discussion of them amplifies our conclusion that the intention of the ordinance is to protect against a sense of unease and dangers reasonably to be apprehended on account of strangers filtering through the community. To give effect to that intention, since doubtless the municipal authorities would want the enactment to remain to the extent that it may, we have performed such judicial pruning as will render the ordinance constitutional. *State v. Zito*, 54 *N. J.* 206, 218 (1969). See also *State v. Profaci*, 56 *N. J.* 346, 349–350 (1970); *State v. DeSantis*, 65 *N. J.* 462, 472–473 (1974).

358

I

In evaluating defendant's position we are mindful of the traditional presumption of validity in favor of a municipal enactment, *e. g., Moyant v. Paramus*, 30 *N. J.* 528, 534 (1959), overcome by a showing that the ordinance is arbitrary or unreasonable, *Kozesnik v. Montgomery Twp.*, 24 *N. J.* 154, 167 (1957), or that it is constitutionally defective on its face. *E. g., City of Elizabeth v. Sullivan*, 100 *N. J. Super.* 51, 55, 58–59 (Cty. Ct. 1968).

Constitutional infirmities aside, it is clear that a municipality may require advance registration of persons who solicit or canvass from house to house. *Mogolefsky v. Schoem*, 50 *N. J.* 588, 595 (1967) ; *Clifton v. Weber*, 84 *N. J. Super.* 333, 336 (App. Div. 1964), aff'd, 44 *N. J.* 266 (1965) ; *Moyant v. Paramus, supra*, 30 *N. J.* at 544. As long as the requirements imposed by such an ordinance are substantially related to the public good which it seeks to advance, the police power of the state has not been over-extended and the act is within the scope of the grant of that power embodied in *N. J. S. A.* 40 :48–2. See *Schmidt v. Board of Adjustment of City of Newark*, 9 *N. J.* 405, 416 (1952) ; *Toms River Publishing Co. v. Manasquan*, 127 *N. J. Super.* 176, 181 (Ch. Div. 1974).

Defendants base their argument of invalid exercise of police power on a narrow reading of the ordinance. They interpret it as seeking to guard against only essentially fraudulent business practices. As applied to them they believe the ordinance to be overbroad and to impose upon their efforts strictures not reasonably related to the evil sought to be prevented. Their position is that the residents of Collingswood cannot fall victim to unethical business practices because defendants are not engaged in the business of selling; rather, they are conducting a market survey, the gathering of a "product" instead of the dispensing of one.

However, Section 3 of the ordinance states a somewhat broader purpose: "to prevent fraud, crime and unethical and dishonest business practices *and* for the general

protection, health and welfare of the residents of the Borough of Collingswood" (emphasis added). Thus, defendants have overlooked two primary purposes of the enactment: (1) deterring the use of soliciting and canvassing to gain access to homes for criminal purposes, and (2) maintaining quiet and privacy for residents of the Borough. Both are "legitimate objects" of municipal concern. *Mogolefsky v. Schoem, supra,* 50 *N. J.* at 595.

[6] The means employed are neither unrelated to the objectives of the ordinance nor are they unreasonable. First, the identification requirements discourage resort to the subterfuge of canvassing as a means of furthering criminal purposes, whether immediate or sometime in the future. *Cf. Dziatkiewicz v. Maplewood,* 115 *N. J. L.* 37, 42 (Sup. Ct. 1935). Second, the registration certificate obtained by a canvasser affords a ready means of identification to both the resident and the police and serves to allay concern over the presence of an unfamiliar face in a neighborhood or on a doorstep. See *Mogolefsky v. Schoem, supra,* 50 *N. J.* at 595. Third, compliance is left mainly with the registrant who supplies the required information. While the Borough has circumscribed severely the discretion to refuse a permit, we interpret the ordinance, much as did the County Court, as permitting no exercise of discretion whatsoever and thus as requiring a ministerial issuance. See III, *infra.*

Defendants' challenge to the exercise of police power is misplaced; consequently, it is rejected.

## II

Defendants next argue that requiring them to supply Collingswood police with detailed information has the cumulative effect, in light of the multiplicity of similar ordinances in other towns, of placing an unconstitutional burden on interstate commerce. However, not all burdens on interstate commerce are prohibited. The question here is whether the burden is undue or discriminatory. See, *e. g.,*

*Nippert v. City of Richmond,* 327 *U. S.* 416, 425, 66 S. Ct. 586, 590, 90 *L. Ed.* 760, 765 (1946).

█ Where a regulation is not essentially economic in purpose and effect, as in *Nippert, supra,* but is instead a social regulation designed to protect local interests, different considerations apply. *Breard v. City of Alexandria,* 341 *U. S.* 622, 638, 71 S. Ct. 920, 930, 95 *L. Ed.* 1233, 1246 (1951). In *Breard* the Supreme Court distinguished social from economic interests as a rationale for burdening interstate commerce, and declined to void, on the basis of the commerce clause, an ordinance which declared the practice of soliciting or peddling from house to house without first obtaining permission from the individual homeowners to be a misdemeanor. The Court stated that the ordinance was justified by the city's "duty of protecting its citizens against the practices deemed subversive of privacy and of quiet." *Id.* at 640, 71 S. Ct. at 931, 95 *L. Ed.* at 1246–1247. It is just such local concerns that the Collingswood ordinance addresses.

█ However, as a legitimate social regulation the Collingswood ordinance must still be examined for its cumulative effect on interstate commerce. See *Moyant v. Borough of Paramus, supra,* 30 *N. J.* at 550–551. The ordinance at hand does not discriminate against out-of-state canvassers to the favor of local or in-state businesses, for it applies to "all persons." But this is not determinatve of the issue. In *Nippert v. City of Richmond, supra,* an annual license tax of a fixed amount (plus a percentage determined from prior year's activity) was found to be invalid despite its stated similar treatment of local and out-of-state commerce. The Court found that the ordinance in question discriminated in favor of local businesses because of the general or cumulative burden imposed on interstate concerns who found it necessary to transact business in numerous localities, each of which could potentially enact a fixed license tax. See *id.,* 327 *U. S.* at 429–431, 66 S. Ct. at 592–594, 90 *L. Ed.* at 767–769. The effect of such multiplicity could work an exclusion on interstate commerce through an unacceptable financial bur-

den and consequent business discouragement. A similar conclusion was reached in *Moyant v. Borough of Paramus, supra,* which dealt with registration requirements of a $1000 bond, a $25 license tax, and a physician's certificate. Both cases, however, are distinguishable from the present one in that they imposed financial restrictions, having an immediate and obvious impact on interstate commerce.

New Jersey cases have recognized the authority of municipalities to regulate the business of soliciting and canvassing to protect the social well-being of a community even though such regulations touch upon interstate commerce. For example, *Mount Holly Twp. v. Omar,* 51 *N. J. Super.* 201 (Cty. Ct. 1958), upheld a simple registration ordinance where the applicant was required to give his name, a photograph, other identifying matter and to pay a fee of $.75. In *State v. Mauer,* 75 *N. J. Super.* 90 (Cty. Ct. 1962), a more onerous enactment was invalidated on the grounds of a three-day waiting period and the potential cumulative burden compliance therewith would present when viewed in the light of requirements of other ordinances in surrounding communities. This position, however, was impliedly rejected in the later case of *Clifton v. Weber, supra,* where the Appellate Division refused to speculate as to the possible burden of similar ordinances in other municipalities and expressed the hope that co-operation among communities would reduce any cumulative effect. 84 *N. J. Super.* at 339. There, a conviction under an ordinance which required a $3 fee and an investigation period which took from 10 to 21 days was upheld.

Compared with the comprehensive registration requirement sustained in *Clifton v. Weber, supra,* and those struck down in *Moyant v. Borough of Paramus, supra,* and *State v. Mauer, supra,* the Collingswood ordinance presents a picture of restraint; no fee is involved,[1] no fingerprinting

---

[1] We were informed by the municipal prosecutor at oral argument that while there is no fee applicable by the terms of Ordinance No. 601, the Borough does have a general fee ordinance which would apply

is necessary, and no investigatory period is established. We find, however, that the requirements of Section 4(f) of the ordinance relating to "the days, dates and route of * * * business" and the requirement of Section 7 respecting deposit of the registration card after each day's work are restraints which cumulatively burden interstate commerce. We invalidate the ordinance as to these provisions but find that the remaining requirements are neither undue nor discriminatory, and that as amended the ordinance survives so much of the challenge as is based on an impermissible burden on interstate commerce.

## III

A more troublesome question presented by this appeal springs from the defendants' challenge alleging infringement of their rights under the First Amendment, made applicable to the states by the Fourteenth Amendment. On this issue we find the parties' positions at opposite extremes. The Borough contends that defendants were entitled to virtually no First Amendment protection at all under the circumstances, whereas defendants assert their activities were absolutely protected and not constitutionally susceptible of any infringement.

We attend first to the Borough's argument, which is to the effect that no First Amendment protection was afforded because defendants' occupation involved "commercial speech." See *Valentine v. Chrestensen,* 316 *U. S.* 52, 62 S. Ct. 920, 86 *L. Ed.* 1262 (1942)[2]; *cf. Allen v. McGovern,* 12 *N. J. Misc.*

to activities conducted under the ordinance in question; that the Borough officials had never collected any fee from registrants under this ordinance; and that in any event the general fee ordinance would be amended to render it inapplicable to those affected by Ordinance No. 601.

[2]Since *Valentine* the reported cases generally resist classifying as commercial any form of speech other than advertisements. *E. g., Pittsburg Press Co. v. Pittsburgh Comm. on Human Relations,* 413 *U. S.* 376, 93 S. Ct. 2553, 37 *L. Ed.* 2d 669 (1973); *United States v. Bob*

12 (Sup. Ct. 1933). While it is apparent that the ordinance, in part at least, addresses business-oriented pursuits, we believe it would be an unwarranted extension of the commercial speech doctrine to classify defendants' communication ·efforts wholly within that concept, thereby according them minimal constitutional protection or none at all.

It is true that the speech involved here has commercial overtones since the surveys taken in Collingswood were to be sold for a profit and the employer of the two defendants is a commercial organization. Nevertheless, it is ·equally clear that speech is not unprotected merely because it is uttered by a corporation as opposed to an individual and because it serves the economic purposes of the corporate entity. See, *e. g.*, *Thomas v. Collins*, 323 *U. S.* 516, 531, 65 S. Ct. 315, 323, 89 *L. Ed.* 430, 441 (1945); *cf. Breard v. Alexandria, supra*, 341 *U. S.* at 642, 71 S. Ct. at 932, 95 *L. Ed.* at 1248. See generally Redish, "The First Amendment in the Marketplace: Commercial Speech and Values of Free Expression," 39 *Geo. Wash. L. Rev.* 429 (1971). In any ·event we need not decide this case on the dubious distinction[3]

---

*Lawrence Realty, Inc.*, 474 *F.* 2d 115, 121 (5th Cir.), *cert.* den., 414 *U. S.* 826, 94 S. Ct. 131, 38 *L. Ed.* 2d 59 (1973); *Banzhaf v. FCC*, 132 *U. S. App. D. C.* 14, 405 *F.* 2d 1082 (D. C. Cir. 1968), *cert.* den. 396 *U. S.* 842, 90 S. Ct. 50, 24 *L. Ed.* 2d 93 (1969); *Capital Broad-casting Co v. Mitchell*, 333 *F. Supp.* 582 (D. D. C. 1971), aff'd *sub. nom. Capital Broadcasting Co. v. Kleindienst*, 405 *U. S.* 1000, 92 S. Ct. 1289, 31 *L. Ed.* 2d 472 (1972); *United States v. Hunter*, 459 *F.* ·2d 205 (4th Cir), *cert.* den., 409 *U. S.* 934, 93 S. Ct. 235, 34 *L. Ed.* 2 189 (1972); *Weaver v. Jordan*, 64 Cal. 2d 235, 49 *Cal. Rptr.* 537, 411 *P.* 2d 289, *cert.* den., 385 *U. S.* 844, 87 S. Ct. 49, 17 *L. Ed.* 2d 75 (1966); *United Advertising Corp. v. Borough of Raritan*, 11 .*N. J.* 144 (1952); *Passaic Daily News v. Blair*, 63 *N. J.* 474 (1973); ·*Supermarkets General Corp. v. Sills*, 93 *N. J. Super.* 326 (Ch. Div. ·1966). But see, *e. g., Hood v. Dun & Bradstreet, Inc.*, 486 *F.* 2d 25 (5th Cir. 1973); *George R. Whitten, Jr., Inc. v. Paddock Pools, ·etc., Inc.*, 424 ·*F.* 2d 25 (1st Cir. 1970); *Holiday Magic v. Warren*, ·357 *F. Supp.* 20 (E. D. Wis. 1973).

[3]Justice Douglas has said that "[t]he [Chrestensen] ruling was ·casual, almost offhand. And it has not survived reflection." *Cammarano v. United States*, 358 *U. S.* 498, 514, 79 S. Ct. 524, 534, 3

between commercial and non-commercial speech, it being clear, as indicated, that at least some measure of First Amendment protection attaches here.

Defendants' First Amendment argument is that, as applied to their research survey activity, no registration requirement whatsoever may constitutionally be imposed. Further, they argue that as a consequence of its overbreadth the ordinance permits Borough officials to deny registration cards to canvassers and solicitors for arbitrary or otherwise improper reasons and that this submission to the undefined discretion of municipal authorities results in an abridgment of their right to freedom of speech.

Parenthetically, we note that defendants are not before this Court challenging the prospective validity of the ordinance, nor are they appealing from a refusal of Collingswood Borough to issue a registration card, nor does it appear from the record that they attempted to register as required. While concededly Ordinance No. 601 is not a model of clarity, nevertheless we conclude that it is sufficient on its face so that it could not properly be ignored with impunity by these defendants. See *Poulos v. New Hampshire,* 345 *U. S.* 395, 73 S. Ct. 760, 97 *L. Ed.* 1105 (1953); *Walker v. Birmingham,* 388 *U. S.* 307, 87 S. Ct. 1824, 18 *L. Ed.* 2d 1210 (1967). Defendants' conduct clearly falls within the proscription of this ordinance despite whatever infirmities therein might be exposed by judicial scrutiny, which defects we undertake to excise. *Cf. Broadrick v. Oklahoma,* 413 *U. S.* 601, 93 S. Ct. 2908, 37 *L. Ed.* 2d 830 (1973).

We first consider the seemingly broad sweep of activities embraced by Section 1: "no persons * * * shall * * * distribute circulars or other matter, or call from door to door, or place to place, in the Borough of Collingswood without first registering * * *." Were this Section read in a vacuum, it might conceivably be interpreted to include a re-

---

*L. Ed.* 2d 462, 472 (1959) (concurring opinion). But *cf. Lehman v. City of Shaker Heights,* 418 *U. S.* 298, 305, 94 S. Ct. 2714, 2718, 41 *L. Ed.* 2d 770, 778 (1974) (concurring opinion).

striction on canvassing, soliciting or distributing non-commercial materials in a public place by requiring prior registration — a legislative objective of doubtful validity. See *Lovell v. Griffin*, 303 *U. S.* 444, 58 S. Ct. 666, 82 *L. Ed.* 949 (1938); *Strasser v. Doorley*, 432 *F.* 2d 567, 569 (1st Cir. 1970) ("In the face of these burdens upon the exercise of first amendment rights, defendants point to no governmental interest of any importance that would be served by registration and identification."); *Wulp v. Corcoran*, 454 *F.* 2d 826 (1st Cir. 1972); *City of Elizabeth v. Sullivan, supra; compare Cantwell v. Connecticut*, 310 *U. S.* 296, 60 S. Ct. 900, 84 *L. Ed.* 1213 (1940), with *Thomas v. Collins, supra*. Read as a whole, however, the ordinance clearly delimits the proscribed activity. Thus, the title declares its purpose "to further control canvassing and soliciting;" Sections 3 and 8 have a business or commercial orientation; and Section 10 deals with non-commercial organizations specifically soliciting "money, property or financial assistance for which no merchandise * * * [is] required." Further, Section 2 narrowly describes the place-to-place nature of the activity which the ordinance seeks to regulate. We have declared the ordinance's purposes to be deterrence of gaining access to homes for criminal purposes and maintenance of quiet and privacy. The intention seems clear to address door-to-door activity on private property, "conduct of one limited kind." *Adderley v. Florida*, 385 *U. S.* 39, 42, 87 S. Ct. 242, 244, 17 *L. Ed.* 2d 149, 153 (1966). We adopt this "readily apparent construction." *Dombrowski v. Pfister*, 380 *U. S.* 479, 491, 85 S. Ct. 1116, 1123, 14 *L. Ed.* 2d 22, 31 (1965).

As thus construed the Collingswood ordinance undertakes generally to regulate activity which cannot be characterized as "pure speech." The enactment's focus on the door-to-door aspect, while assuredly not removing defendants' activity from the ambit of all First Amendment concerns, nevertheless shifts the emphasis to "conduct," traditionally surrounded with lesser protection than "pure speech." *Cox v.*

*Louisiana,* 379 *U. S.* 536, 555, 85 *S. Ct.* 453, 465, 13 *L. Ed.* 2d 471, 484 (1965). We repeat, this is not to say that no protection at all may be afforded or that an absolute prohibition of defendants' activities would be tolerated. Obviously that is not the purpose of this ordinance.

Persons desiring to canvass or solicit from door to door within the Borough may do so simply by identifying themselves to the Chief of Police. This is acomplished by providing information easily obtainable by the applicant. In no sense do the identification requirements "slip from the neutrality of time, place, and circumstance into a concern about content." *Police Dept. v. Mosley,* 408 *U. S.* 92, 99, 92 S. Ct. 2286, 2292, 33 *L. Ed.* 2d 212, 219 (1972) quoting from Kalven, "The Concept of the Public Forum: Cox v. Louisiana," 1965 *Sup. Ct. Review* 29). *Cf. Broadrick v. Oklahoma, supra,* 413 *U. S.* at 614–615, 93 S. Ct. at 2917–2918, 37 *L. Ed.* 2d at 841. The enactment does not strike at the heart of First Amendment protected activity, see *Lovell v. Griffin, supra,* 303 *U. S.* at 451, 58 S. Ct. at 668, 82 *L. Ed.* at 953, by conferring in licensing officials a "virtually unbridled and absolute power to prohibit" such activity. *Shuttlesworth v. Birmingham,* 394 *U. S.* 147, 150, 89 S. Ct. 935, 938, 22 *L. Ed.* 2d 162, 167 (1969).[4]

On close inspection, however, we do conclude that in one regard the ordinance undertakes to impose too broad discretion in the Chief of Police and the Borough Commis-

---

[4] Ordinances similar in many respects to the Collingswood enactment have been voided because of an improper grant of discretionary power in licensing officials. *E. g., Schneider v. Irvington,* 308 *U. S.* 147, 164, 60 S. Ct. 146, 152, 84 *L. Ed.* 155, 166 (1939) ; *Evans v. LePore,* 26 *N. J. Misc.* 215, 216–217 (Sup. Ct. 1948). See *Cantwell v. Connecticut, supra,* 310 *U. S.* at 306, 308, 60 S. Ct. at 904, 905, 84 *L. Ed.* at 1219; *cf. Staub v. Baxley,* 355 *U. S.* 313, 322, 78 S. Ct. 277, 282, 2 *L. Ed.* 2d 302, 311 (1958) ; *Edgewater v. Cox,* 123 *N. J. L.* 212, 214–215 (E. & A. 1939) : But see *Hughes v. Detroit,* 217 *Mich.* 567, 187 *N. W.* 530 (1922) ; *City of Washburn v. Ellquist,* 242 *Wis.* 609, 9 *N. W.* 2d 121, 10 *N. W.* 2d 292 (1943) ; *Village of Mogadore v. Coe,* 29 *Ohio O.* 2d 44, 197 *N. E.* 2d 570 (Ct. C. P. 1963).

sioners. Section 4 and Section 8 deal with conviction of a "crime, misdemeanor, or disorderly conduct offense." Section 4 requires the applicant to give a written statement of such conviction, disclosing the nature of the offense, where and when the conviction occurred, and the penalty. Section 8 provides that in the event an application is disapproved by the Chief of Police because of conviction or reported unethical business practices, then an appeal may be taken to the Borough Commissioners. Thus, the ordinance does not mandate denial for certain particularized egregious conduct nor furnish any clue as to what standards the Chief may bring to bear on the issue of when to deny or when to grant a permit in the face of a conviction or reported unethical business practices. His discretion in this respect is entirely — and therefore improperly — unlimited. The same is true with respect to the Borough Commissioners in their review of the Chief's decision on appeal.

A municipality may very well wish to license only purely commercial soliciting and condition the license upon specified standards relating to the applicant's fitness to do business. Just such an enactment was before this Court in *Moyant v. Paramus, supra,* where the norm of "satisfactory" as to an applicant's "character and business responsibility" was found to be "minimally sufficient." *Id.,* 30 *N. J.* at 554.

Here, however, we are confronted with an ordinance that goes beyond commercial soliciting and imposes no standards to aid in determining when a permit may issue in the face of a conviction or reported unethical business practices. We therefore declare Section 8 to be invalid.

In the final analysis all we are faced with in Ordinance No. 601 is an "identification device." Resort to this method of serving the interests sought to be protected here has received ample support in the dicta of prior decisions; our independent evaluation of the policy considerations therein convinces us that such a device is valid.

For example, in *Cantwell v. Connecticut, supra*, the United States Supreme Court explicitly stated that

[w]ithout a doubt a state may protect its citizens from fraudulent solicitation by requiring a stranger in the community, before permitting him publicly to solicit funds for any purpose, to establish his identity and his authority to act for the cause which he purports to represent. [*Id.* 310 U. S. at 306, 60 S. Ct. at 904, 84 *L. Ed.* at 1219 (footnote omitted)].

And in the later case of *Martin v. City of Struthers*, 319 U. S. 141, 63 S. Ct. 862, 87 *L. Ed.* 1313 (1943), the Court approved the use of "identification devices [to] control the abuse of the privilege by criminals posing as canvassers." *Id.* at 148, 63 S. Ct. at 866, 87 *L. Ed.* at 1319–1320 (footnote omitted). The concurring opinion of Mr. Justice Murphy in *Martin* also noted that

[n]o doubt there may be relevant considerations which justify considerable regulations of door to door canvassing, even for religious purposes, — regulation as to time, number and identifiaction of canvassers, etc., which will protect the privacy and safety of the home and yet preserve the substance of religious freedom. [*Id.* at 151, 63 S. Ct. at 867, 87 *L. Ed.* at 1321 (Murphy, J., joined by Douglas and Rutledge, JJ., concurring)].

See *Schneider v. Irvington, supra,* 308 U. S. at 165, 60 S. Ct. at 152, 84 *L. Ed.* at 166–167; *cf. NAACP v. Alabama,* 357 U. S. 449, 464, 78 S. Ct. 1163, 1172, 2 *L. Ed.* 2d 1488, 1500 (1958); *Breard v. Alexandria, supra,* 341 U. S. at 644–645, 71 S. Ct. at 933–934, 95 *L. Ed.* at 1249; *Moyant v. Paramus, supra,* 30 N. J. at 544–545.

Perhaps the strongest statement of approval of identification requirements, and most illustrative of the dichotomy between First Amendment privileged speech and conduct susceptible to reasonable registration requirements, is found in *Thomas v. Collins, supra.* There a state law which conditioned the right of a union organizer to solicit for membership upon the securing of a card was found to be a prior restraint upon the protected First Amendment right

"to make a public speech to enlist support for a lawful movement." *Id.,* 323 *U. S.* at 540, 65 S. Ct. at 327, 89 *L. Ed.* at 445. The Court went on to describe conduct which, however, was not so protected:

Once the speaker goes further, however, and engages in *conduct which amounts to more than the right of free discussion comprehends,* as when he undertakes the collection of funds or securing subscriptions, he enters a realm where *a reasonable* registration or *identification requirement may be imposed.* [*Id.,* 323 U. S. at 540, 65 S. Ct. at 327, 89 *L. Ed.* at 446 (emphasis added)].

▪ In the balance between the right of the surveyors to collect data and the right of the Borough to protect its homeowners against crime and untoward invasions of privacy, the latter consideration deserves some weight. See *Martin v. City of Struthers, supra,* 319 *U. S.* at 143, 63 S. Ct. at 863, 87 *L. Ed.* at 1317; *Breard v. Alexandria, supra,* 341 *U. S.* at 644, 71 S. Ct. at 933, 95 *L. Ed.* at 1249; *cf. State v. Kolcz,* 114 *N. J. Super.* 408, 416 (Cty. Ct. 1971). We find that the identification requirement of the Collingswood ordinance is sufficiently reasonable and neutral to withstand constitutional attack and is a legitimate tool in the hands of municipalities, particularly as applied to defendants' conduct here.

The free speech incursion of Ordinance No. 601 is minimal due to the nature of the conduct regulated, the ministerial issuance required, the narrow construction given the ordinance and the neutral requirements imposed. As construed the ordinance successfully withstands First Amendment attack.

## IV

Defendants' final contention is that the ordinance establishes two impermissible classifications of house-to-house canvassers in that Section 10 imposes less stringent requirements on members of charitable, religious, patriotic, philanthropic or community organizations who are soliciting

"money, property or financial assistance for which no merchandise * * * [is] required" than are imposed on peddlers of wares or on surveyors.

In its barest terms the Collingswood ordinance does not infringe upon door-to-door activity differently. The infringement, which we have construed above as being incidental and neutral, applies equally to both classes—that is, all persons who conduct door-to-door activity are required to identify themselves; no one one is exempt from that stricture. Thus, we are not faced with a categorization which "closely interwine[s] with First Amendment interests," *Police Dept. v. Mosley, supra,* 408 *U. S.* at 95, 92 S. Ct. at 2289, 33 *L. Ed.* 2d at 216, or which treats door-to-door conduct dissimilarly. See *id.*

The distinctions of which defendants complain deal simply with the quantum of information necessary to complete the identification process. In examining these differences application of a test based either on mere rationality or strict scrutiny is not called for; rather we adopt a "means-focused" standard. This narrows our inquiry to "the crucial question [of] whether there is an appropriate governmental interest suitably furthered by the differential treatment." *Id.* See Gunther, 'The Supreme Court, 1971 Term — Foreword: In Search of Evolving Doctrine on a Changing Court: A Model for a Newer Equal Protection," 86 *Harv. L. Rev.* 1, 20–24 (1972); *cf. Robinson v. Cahill,* 62 *N. J.* 473, 491–492 (1973).

Section 4 seeks information which is logical and necessary to the broad purpose of the ordinance but nonetheless collateral thereto. Section 10 excuses, in effect, described "charitable" solicitors from several of the information requirements of Section 4. Our view of the differences in the quantity of information being sought between Section 4 and Section 10 is that they are not differences of substance but of incidental scope.

In this light we conclude that the exemptions parallel the Borough's expressed concern for their Little

League and other local community organizations. The more rigorous requirements of the general identification section might well work a real hardship on these local groups, where a large number of their solicitors are children. Most charities, unlike most business ventures, draw their solicitors from the immediate community and function in a highly localized manner. Moreover, recognized charitable, religious, and civic organizations can be expected to screen the qualifications of individuals who solicit funds for them.

We thus find that Collingswood's interest in not unduly burdening local community solicitation efforts is ample to justify the minor differences engendered in the ordinance before us. We consequently decline to void the ordinance on equal protection grounds.

V

Ordinance No. 601 of the Borough of Collingswood, as construed herein, is valid. If, with that construction, it continues to reflect the legislative intention of the municipal authorities, we strongly suggest that there be printed new copies of the enactment taking cognizance of the deletions we have effected. Not only would that be in keeping with the spirit of this opinion, but more importantly it would best serve those members of the public who might have occasion to seek guidance in the printed word.

The judgment of the Appellate Division upholding the convictions appealed from is:

Affirmed.

PASHMAN, J. (concurring). I concur with the majority in affirming the conviction of the defendants in this matter. I fully join in Parts I, II and IV of the majority opinion. I am, however, rather troubled by Part III, which concerns the possible infringement by the Collingswood ordinance upon rights protected by the first amendment to the federal constitution and *N. J. Const.* (1947) Art. I, ¶ 6, and while I concur in the result, I do so reluctantly and would decide

the case on much narrower grounds and with a much less expansive sweep than do my brethren.

It is now well established that "commercial speech" is not as completely protected by the first amendment[1] as other types of speech. *Eg., Pittsburgh Press Co. v. Pittsburgh Comm. on Human Relations,* 413 *U. S.* 376, 93 S. Ct. 2553, 37 *L. Ed.* 2d 669 (1973); *Capital Broadcasting Co. v. Kleindienst,* 405 *U. S.* 1000, 92 S. Ct. 1289, 31 *L. Ed.* 2d 472 (1972) affirming 333 *F. Supp.* (D. D. C. 1971) (3 judge court); *New York Times v. Sullivan,* 376 *U. S.* 254, 84 S. Ct. 710, 11 *L. Ed.* 2d 686 (1964); *Murdock v. Pennsylvania,* 319 *U. S.* 105, 63 S. Ct. 870, 87 *L. Ed.* 1292 (1943); *Jamison v. Texas,* 318 *U. S.* 413, 63 S. Ct. 669, 87 *L. Ed.* 869 (1943); *Valentine v. Chrestensen,* 316 *U. S.* 52, 62 S. Ct. 920, 86 *L. Ed.* 1262 (1942); *Hood v. Dun & Bradstreet, Inc.,* 486 *F.* 2d 25 (5 Cir. 1973), *cert.* denied 415 *U. S.* 985, 94 S. Ct., 1580, 39 *L. Ed.* 2d 882 (1974); *Rockville Reminder, Inc. v. United States Postal Service,* 480 *F.* 2d 4 (2 Cir. 1973); *United States v. Bob Lawrence Realty, Inc.,* 474 *F.* 2d 115 (5 Cir. 1973), *cert.* denied 414 *U. S.* 826, 94 S. Ct. 131, 38 *L. Ed.* 2d 59 (1974); *United States v. Hunter,* 459 *F.* 2d 205 (4 Cir. 1972), *cert.* denied 409 *U. S.* 934, 93 S. Ct. 235, 34 *L. Ed.* 2d 189 (1972); *George R. Whitten, Jr., Inc. v. Paddock Pools, Inc.,* 424 *F.* 2d 25 (1 Cir. 1970), *cert.* denied 400 *U. S.* 850, 91 S. Ct. 54, 27 *L. Ed.* 2d 88 (1970); *Banzhaf v. F. C. C.,* 132 *U. S.* App. D. C. 14, 405 *F.* 2d 1082 (D. C. Cir. 1968), *cert.* denied 396 *U. S.* 842, 90 S. Ct. 50, 24 *L. Ed.* 2d 93 (1969); *Boscia v. Warren,* 359 *F. Supp.* 900 (E. D. Wis. 1973); *Holiday Magic, Inc. v. Warren,* 357 *F. Supp.* 20 (E. D. Wis. 1973); *Sunday Mail, Inc. v. Christie,* 312 *F.*

---

[1]Defendants do not suggest that *N. J. Const.* (1947) Art. 1, ¶ 6 affords them more protection than does the first amendment, and therefore I see no need to pursue that issue here. We are, of course, not bound to limit the protection provided by our State constitution to that provided by the federal constitution. *Robinson v. Cahill,* 62 *N. J.* 473 (1973) *cert.* denied 414 *U. S.* 976, 94 S. Ct. 292, 38 L. Ed. 2d 219 (1973).

*Supp.* 677 (C. D. Cal. 1970); *Passaic Daily News v. Blair,* 63 *N. J.* 474 (1973); *United Advertising Corp. v. Raritan,* 11 *N. J.* 144 (1952); *Supermarkets General Corp. v. Sills,* 93 *N. J. Super.* 326 (Ch. Div. 1966); *see Breard v. Alexandria,* 341 *U. S.* 622, 71 S. Ct. 920, 95 *L. Ed.* 1233 (1951)[2]. The distinction is a logical corollary of the modern understanding of the first amendment as primarily protecting communication of ideas and promoting the operation of democratic processes. *Holiday Magic, Inc. v. Warren, supra,* 357 *F. Supp.* at 25–26. *See generally,* Brennan "The Supreme Court and the Meiklejohn Interpretation of the First Amendment," 79 *Harv. L. Rev.* 1 (1965).

The boundaries of commercial speech have proven somewhat difficult to fix, *see generally, Holiday Magic, Inc., supra* at 25; Note, "Freedom of Expression in the Commercial Context," 78 *Harv. L. Rev.* 1191 (1965). The mere fact that speech is uttered by a corporation or association organized for economic gain, *Thornhill v. Alabama,* 310 *U. S.* 88, 60 S. Ct. 736, 84 *L. Ed.* 1093 (1940) (union); *Grosjean v. American Press Co.,* 297 *U. S.* 233, 56 S. Ct. 444, 80 *L. Ed.* 660 (1935) (newspaper corporation); *First National Bank of Boston v. Attorney General, Mass.,* 290 *N. E.* 2d 526 (Mass. Sup. Jud. Ct. 1972) (bank corporation), or that the primary purpose of the speech itself is economic gain, *Smith v. California,* 361 *U. S.* 147, 150, 80 S. Ct. 215, 4 *L. Ed.* 2d 205 (1959); *Thomas v. Collins,* 323 *U. S.* 516, 65 S. Ct. 315, 89 *L. Ed.* 430 (1945), does not in and of itself

---

[2]The doctrine has, of course, not gone without criticism. *See Cammarano v. United States,* 358 *U. S.* 498, 513–515, 79 S. Ct. 524, 3 L. Ed. 2d 462 (1959) (Douglas, J. concurring); *Dun & Bradstreet, Inc. v. Grove,* 404 *U. S.* 898, 92 S. Ct. 204, 30 L. Ed. 2d 175 (1971) (Douglas, J. dissenting from denial of certiorari); *Pittsburgh Press Co. v. Pittsburgh Comm. on Human Relations, supra,* 413 *U. S.* at 397–400, 93 S. Ct. 2553, 37 L. Ed. 2d 669 (Douglas, J. dissenting); Redish, "The First Amendment in the Marketplace: Commercial Speech and the Values of Free Expression," 39 *Geo. Wash. L. Rev.* 472 (1971). After *Pittsburgh Press,* though, its continued validity scarcely seems in doubt.

deprive the speech of first amendment protection. The test, as enunciated in *New York Times v. Sullivan, supra,* 376 *U. S.* at 266, 84 S. Ct. 710 and *Pittsburgh Press Co. v. Pittsburgh Comm. on Human Relations, supra,* 413 *U. S.* at 385, 93 S. Ct. 2553, flows more directly from the conceptual foundations of the distinction: Speech is "commercial" if it occurs in a commercial context and does not involve a bona fide attempt to communicate information, express opinion, recite grievances or protest claimed abuses concerning matters of public interest.

In this case, the speech involved was that of persons engaged in taking an opinion poll surveying listener preferences for a radio station. The polltakers were not attempting to communicate any ideas; they were hired merely to assist the radio station in its efforts to acquire greater advertising revenues.

Characterizing speech as "commercial" does not necessarily deprive it of all first amendment protections. At the very least, however, it frees the municipality from the onus of having to demonstrate that the ordinance is justified by a "compelling state interest" as it ordinarily must in first amendment cases. *Williams v. Rhodes,* 393 *U. S.* 23, 89 S. Ct. 5, 21 *L. Ed.* 2d 24 (1968); *United States v. O'Brien,* 391 *U. S.* 367, 376–377, 88 S. Ct. 1673, 20 *L. Ed.* 2d 672 (1968); *NAACP v. Button,* 371 *U. S.* 415, 438, 83 S. Ct. 328, 9 *L. Ed.* 2d 405 (1963); *Thomas v. Collins,* 323 *U. S.* 516, 529–530, 65 S. Ct. 315, 89 *L. Ed.* 430 (1945). The ordinance is rationally related to the legitimate ends of protecting residents against crime and invasions of their privacy. *Moyant v. Paramus,* 30 *N. J.* 528 (1959). Stripped of provisions which are recognized by the majority as unconstitutional, the ordinance in this case is no more objectionable than the one upheld in *Breard v. Alexandria,* 341 *U. S.* 622, 71 S. Ct. 920, 95 *L. Ed.* 1233 (1951), which, in effect, entirely prohibited commercial canvassing. In my view, that case is dispositive of the facts before the Court today.

The majority chooses not to rely on the "commercial speech" doctrine, characterizing it as "dubious."[3] *Ante* at 362–363. While I share the majority's lack of enthusiasm for this distinction and am not all sure that I would have chosen to create it if we were writing on a clean slate, the analysis adopted by the majority seems to me still less satisfactory. Rather than recognizing that municipalities may regulate commercial speech more strictly than they may regulate other types of speech, the majority attempts to find a rationale within the first amendment to uphold the ordinance which would be applicable to all forms of speech. Such an effort is not only unnecessary, but, as I have elaborated in my opinion in *Hynes v. Mayor and Council of Oradell*, 66 *N. J.* 376 (1974), also decided today, leads the Court in that case to uphold what are, in my view, clearly unconstitutional restrictions on protected speech. Indeed, even the "pruned" Collingswood ordinance, which is ostensibly directed at commercial speech, may be unconstitutional insofar as it sweeps in (inadvertently I suspect) protected speech, *e. g.*, opinion polls conducted by elected officials for purposes of informing themselves of the views of their constituents or by newspaper seeking to determine the attitudes of

---

[3]The majority apparently relies on the opinions of Justice Douglas and the view that cases subsequent to *Valentine v. Chrestensen, supra,* have generally restricted the doctrine to advertisements. The cases do not uniformly support the latter view. *See Hood v. Dun & Bradstreet, Inc.,* 486 *F.* 2d 25 (5 Cir. 1973) (credit report) ; *Rockville Reminder, Inc. v. U. S. Postal Service,* 480 *F.* 2d 4 (2 Cir. 1973) (attachment of private receptacles to rural mailboxes) ; *George R. Whitten, Jr., Inc. v. Paddock Pools, Inc.,* 424 *F.* 2d 25 (1 Cir. 1970) (solicitation of government officials) ; *Boscia v. Warren,* 359 *F. Supp.* 900 (E. D. Wis. 1973) (trade name) ; *Holiday Magic v. Warren,* 357 *F. Supp.* 20 (E. D. Wis. 1973) (solicitation of sales in pyramid scheme) ; *Sunday Mail, Inc. v. Christie,* 312 *F. Supp.* 677 (C. D. Cal. 1970) (distribution of newspapers). *Compare Breard v. Alexandria,* 341 *U. S.* 622, 71 S. Ct. 920, 95 L. Ed. 1233 (1951) *with Martin v. Struthers,* 319 *U. S.* 141, 63 S. Ct. 862, 87 L. Ed. 1313 (1943) (house-to-house solicitation). The eloquent concurrences and dissents of Justice Douglas are just that.

the public on significant issues. *See Talley v. California,* 362 *U. S.* 60, 80 S. Ct. 536, 4 *L. Ed.* 2d 559 (1960); *Thomas v. Collins, supra,* 323 *U. S.* at 540, 65 S. Ct. 315; *Wulp v. Corcoran,* 454 *F.* 2d 826 (1 Cir. 1972); *Strasser v. Doorley,* 432 *F.* 2d 567 (1 Cir. 1970). Construing the ordinance so as to render it constitutional (*See State v. Zito,* 54 *N. J.* 206, 218 (1969)) I would exclude such protected activities from coverage under sections 1 and 2 of the Collingswood ordinance.

I concur in the result only.

PASHMAN, J., concurring in the result.

*For affirmance*—Justices JACOBS, HALL, SULLIVAN, PASHMAN and CLIFFORD and Judges CONFORD and COLLESTER—7.

*For reversal*—None.