NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NOS. A-2377-22
A-2378-22

STATE OF NEW JERSEY,

      Plaintiff-Appellant,

v.

DAANDRE J. WADE,

      Defendant-Respondent.

_____

STATE OF NEW JERSEY,

      Plaintiff-Appellant,

v.

MALIK T. STRINGER,

      Defendant-Respondent.

_____

> **APPROVED FOR PUBLICATION**
>
> **August 10, 2023**
>
> **APPELLATE DIVISION**

> Argued June 6, 2023 – Decided August 10, 2023
>
> Before Judges Gilson, Rose, and Messano.
>
> On appeal from an interlocutory order of the Superior
> Court of New Jersey, Law Division, Middlesex County,
> Indictment No. 22-11-1041.
>
> Nancy A. Hulett, Assistant Prosecutor, argued the cause
> for appellant (Yolanda Ciccone, Middlesex County

Prosecutor, attorney; Nancy A. Hulett, of counsel and on the briefs).

Scott M. Welfel, Assistant Deputy Public Defender, argued the cause for respondent Daandre J. Wade (Joseph E. Krakora, Public Defender, attorney; Scott M. Welfel, of counsel and on the briefs).

James R. Lisa, attorney for respondent Malik T. Stringer, joins in the briefs of respondent Daandre Wade.

David Chen, Deputy Attorney General, argued the cause for amicus curiae Attorney General of New Jersey (Matthew J. Platkin, Attorney General, attorney; Angela Cai, Deputy Solicitor General, and David Chen, of counsel and on the briefs).

The opinion of the court was delivered by

GILSON, P.J.A.D.

The issue presented on these appeals is whether New Jersey's gun-carry permit statute and the statute criminalizing permit violations were facially unconstitutional in 2019 under the Second Amendment to the United States Constitution. In May 2019, defendants Daandre Wade and Malik Stringer were found in possession of two loaded handguns while driving a car on public roads. Neither defendant had a permit to carry a handgun. Both defendants were indicted for second-degree unlawful possession of a handgun without a permit in violation of N.J.S.A. 2C:39-5(b)(1).

Following the United States Supreme Court's decision in New York State Rifle & Pistol Ass'n v. Bruen, 597 U.S. ___, 142 S. Ct. 2111 (2022), defendants moved to dismiss those criminal charges, arguing that the version of the gun-carry permit statute in effect at the time of their arrest, N.J.S.A. 2C:58-4 (2018), was facially unconstitutional under Bruen. Defendants contended that because the "justifiable need" provision in N.J.S.A. 2C:58-4(c) (2018) was unconstitutional, all provisions of N.J.S.A. 2C:58-4 (2018) and N.J.S.A. 2C:39-5(b)(1) were unconstitutional. The trial court agreed, granted defendants' motion, and issued an order dismissing those charges. We granted the State leave to appeal the order as it related to both defendants and now consolidate the appeals for purposes of this opinion.

We hold that defendants did not have standing to challenge the statutes because neither defendant had applied for a permit to carry a handgun. Nevertheless, we address the merits of the constitutional challenge because it is a significant issue that warrants consideration. See Petro v. Platkin, 472 N.J. Super. 536, 564 (App. Div. 2022) (explaining that we can decide to reach the merits of a constitutional challenge even when the challenger lacks standing). We hold that N.J.S.A. 2C:58-4 (2018) and N.J.S.A. 2C:39-5(b)(1) were not facially unconstitutional because the justifiable need requirement set forth in

N.J.S.A. 2C:58-4(c) (2018) was severable and the remaining provisions of N.J.S.A. 2C:58-4 (2018), as well as N.J.S.A. 2C:39-5(b)(1), were constitutional and enforceable. Therefore, in 2019, each defendant needed a permit to carry handguns outside their homes and if the State proves that they did not have permits, they will be guilty of a crime under N.J.S.A. 2C:39-5(b)(1). Accordingly, we reverse and vacate the order dismissing the two counts of the indictment charging defendants with unlawful possession of a handgun without a permit. We remand and direct the trial court to reinstate both counts.

I.

The matter came before the trial court on a motion to dismiss two counts of a criminal indictment. Consequently, on this appeal, we accept the facts as alleged by the State.[1] See State v. Cobbs, 451 N.J. Super. 1, 5 (App. Div. 2017).

On May 4, 2019, defendants were in a motor vehicle, driven by Stringer with Wade as the sole passenger. While driving in New Brunswick, two police officers on patrol observed and checked the vehicle's temporary license plate and learned that it was not valid. Accordingly, the police stopped the vehicle

---

[1] In discerning the facts, we have reviewed the record, including the indictment and a police report that summarized the events leading to the stop and search of the defendants' vehicle.

A-2377-22

and Stringer could not produce a valid registration for the vehicle. While speaking with Stringer, an officer smelled the odor of raw marijuana emanating from the car, and the officers then searched the vehicle.[2] During that search, the police found two handguns: a 9 mm. Taurus, loaded with six bullets, in the center console; and a 9 mm. Springfield Armory XDS, loaded with seven hollow-point bullets and equipped with a laser sight, under the floormat on the passenger side of the vehicle. Neither defendant had a permit to carry a handgun.

A grand jury indicted defendants for three crimes: in count one, Stringer was charged with second-degree unlawful possession of a handgun without a permit; in count two, Wade and Stringer were charged with second-degree unlawful possession of a handgun without a permit; and in count three, both defendants were charged with fourth-degree possession of hollow-point bullets in violation of N.J.S.A. 2C:39-3(f).

---

[2] At the time of the stop, unauthorized possession and use of marijuana was illegal. N.J.S.A. 2C:35-10(a)(3), (a)(4), and (b) (1997). Under the automobile exception to the warrant requirement, law enforcement officers can search a vehicle without a warrant if there is "probable cause to believe that the vehicle contains contraband or evidence of an offense and the circumstances giving rise to probable cause are unforeseeable and spontaneous." State v. Witt, 223 N.J. 409, 447 (2015). At the time of defendants' arrest, the odor of raw marijuana could supply officers with probable cause to conduct a warrantless search of a vehicle. See State v. Rodriguez, 459 N.J. Super. 13, 25-26 (App. Div. 2019).

In December 2022, after the Supreme Court issued its decision in <u>Bruen</u>, Wade moved to dismiss count two of the indictment and Stringer joined that motion to include count one. In support of Wade's motion, his counsel submitted a certification representing that on the day of his arrest, Wade "had never been convicted of any indictable offense or disorderly persons offense involving an act of domestic violence" and "had not been adjudicated delinquent for any offense that, if committed by an adult, would constitute a crime (a) enumerated in N.J.S.A. 2C:43-7.2 (the No Early Release Act) or (b) that involved the unlawful use or possession of a weapon, explosive or destructive device." The certification also asserted that Wade "was not subject to any of the disabilities enumerated in N.J.S.A. 2C:58-3(c) [(2016)] which would render him unable to obtain a permit under a licensing scheme that removes the unconstitutional justifiable need requirement" and that "under a licensing scheme that did not require . . . Wade to show a justifiable need, he would have otherwise qualified." Neither Stringer nor his attorney filed a certification in support of the motion to dismiss. Both defendants do not contest that they had never sought a permit to carry a firearm.

A-2377-22

On March 31, 2023, after hearing oral argument, the trial court granted defendants' motion and entered an order dismissing counts one and two of the indictment. The court explained the reasons for its ruling in a written opinion.

The trial court ruled that defendants could challenge the gun-carry permit statute even though neither defendant had applied for a permit. In reaching that conclusion, the trial court relied on First Amendment cases, as well as other constitutional decisions, that reasoned if a permit statute was facially unconstitutional the person challenging the statute did not need to have first applied for a license or permit. See Shuttlesworth v. City of Birmingham, 394 U.S. 147, 151 (1969); Staub v. City of Baxley, 355 U.S. 313, 319 (1958); Lovell v. City of Griffin, 303 U.S. 444, 452 (1938); Smith v. Cahoon, 283 U.S. 553, 562 (1931). The trial court also rejected the State's argument that the provision in subsection (c) of N.J.S.A. 2C:58-4 (2018), which contained the justifiable need requirement, could be severed and the remainder of the statute, as well as N.J.S.A. 2C:39-5(b)(1), could still be enforced. The trial court concluded that "New Jersey's handgun-carry permitting regime at the time of defendant[s'] arrest prohibited law-abiding citizens from exercising their Second Amendment right and was, therefore, unconstitutional." Consequently, the trial court

concluded that defendants were free to possess handguns on May 4, 2019, without a permit.

In two motions, the State sought leave to appeal the trial court's order. We granted leave and stayed the dismissal of the charges pending this appeal.

II.

On appeal, the State argues:

> THE TRIAL COURT ERRED BY RELYING ON NEW YORK STATE RIFLE & PISTOL [ASS'N] V. BRUEN, 597 U.S. ___, 142 S. CT. 2111 (2022), TO HOLD THAT PROSECUTIONS UNDER N.J.S.A. 2C:39-5([b])(1) ARE NOW PRECLUDED BECAUSE BRUEN RENDERED N.J.S.A. 2C:58-4 [(2018)] FACIALLY UNCONSTITUTIONAL.

We also granted the New Jersey Attorney General permission to appear and submit a brief as an amicus curiae. The Attorney General contends that the trial court erred for three reasons:

> POINT I – NEW JERSEY'S REQUIREMENT TO OBTAIN A PERMIT BEFORE CARRYING A FIREARM IN PUBLIC REMAINS VALID AFTER BRUEN.
>
> POINT II – THREE PRINCIPLES PREVENT COLLATERAL ATTACKS ON THE PERMITTING LAW:
>
>> A. Defendants Who Possess Other Disqualifiers Cannot Collaterally Attack

8

The "Justifiable Need" Requirement As A Defense To Prosecution.

B. Defendants Who Never Applied For The Relevant Permit Cannot Collaterally Attack The Permitting Law As A Defense To Prosecution.

C. Defendants Who Were Denied A Permit By A Court Cannot Collaterally Attack The Permitting Law And Related Court Order As A Defense To Prosecution.

POINT III – [THESE] DEFENDANT[S] [ARE] NOT ENTITLED TO CHALLENGE THE PERMITTING LAW.

In response, defendants argue N.J.S.A. 2C:39-5(b)(1) could not be enforced while the justifiable need requirement in N.J.S.A. 2C:58-4(c) (2018) was in effect because that requirement was unconstitutional under Bruen. According to defendants, the "confluence" of those statutes created a facially invalid permitting scheme, which they were entitled to disregard because they would have qualified for a gun-carry permit but for that unconstitutional requirement. In that regard, they contend that the justifiable need requirement "was virtually impossible to meet." Therefore, despite not having applied for a permit, defendants argue that they have standing to challenge the gun-permitting scheme because it would have been futile for them to have tried to satisfy that

9

requirement and because they are contesting the permitting scheme's facial validity.

## III.

It is well established that a grand jury indictment is presumptively valid. See State v. Feliciano, 224 N.J. 351, 380 (2016); State v. Francis, 191 N.J. 571, 587 (2007). "[A] court should dismiss [an] indictment 'only on the clearest and plainest ground, and only when the indictment is manifestly deficient or palpably defective.'" State v. Bell, 241 N.J. 552, 560 (2020) (quoting State v. Twiggs, 233 N.J. 513, 531-32 (2018)). Moreover, legislative acts are presumptively valid and constitutional. See State v. Comer, 249 N.J. 359, 384 (2022); State v. Buckner, 223 N.J. 1, 14 (2015).

The issues presented on these appeals are questions of law and involve interpreting the Constitution and New Jersey's gun-carry permitting statutes, which we review de novo. State v. S.S., 229 N.J. 360, 380 (2017); see also Twiggs, 233 N.J. at 532 ("When the decision to dismiss [counts of an indictment] relies on a purely legal question . . . we review that determination de novo."). To place the issues in context, we briefly review the Supreme Court's jurisprudence on the Second Amendment. We also summarize New Jersey's gun-carry permitting laws.

10

A.   The United States Supreme Court's Jurisprudence on the Second Amendment and the <u>Bruen</u> Decision.

The Second Amendment to the United States Constitution states:  "A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed."  <u>U.S. Const.</u> amend. II. In 2008, the United States Supreme Court ruled, for the first time, that the Second Amendment protects the right of individual citizens to keep and bear arms apart from service in a militia.  <u>District of Columbia v. Heller</u>, 554 U.S. 570, 595, 599 (2008).  In <u>Heller</u>, the Court addressed a challenge to the District of Columbia's restrictions to the possession of handguns in homes and the requirement that permitted guns in homes be unloaded and disassembled.  The Court held that those restrictions and requirement were unconstitutional violations of the Second Amendment.  <u>Id.</u> at 635.

Two years later, the Court held that the Second Amendment "is fully applicable to the States" through the Fourteenth Amendment.  <u>McDonald v. City of Chicago</u>, 561 U.S. 742, 750 (2010).  In <u>McDonald</u>, the Court addressed challenges to ordinances of the City of Chicago and one of its suburbs.  The city's ordinances banned the possession of firearms without proper registration and prohibited the registration of most handguns, and the suburb's ordinances banned the possession of handguns.  <u>Ibid.</u>  The city and the suburb argued their

11

ordinances were constitutional because the Second Amendment did not apply to the States. Ibid. In rejecting that argument, the Court held that the "Second Amendment right recognized in Heller" is applicable to the States. Id. at 791 (plurality opinion). In short, in Heller and McDonald, the Court "recognized that the Second and Fourteenth Amendments protect the right of an ordinary, law-abiding citizen to possess a handgun in the home for self-defense." Bruen, 142 S. Ct. at 2122.

In 2022, the Court held "that the Second and Fourteenth Amendments protect an individual's right to carry a handgun for self-defense outside the home." Ibid. In Bruen, the Court addressed a New York law that required people seeking to carry a handgun outside the home to show "proper cause" to obtain a permit to do so. Id. at 2122-23. New York courts had interpreted "proper cause" to require a showing that the applicant had a "special need for self-protection distinguishable from that of the general community." Id. at 2123 (citation omitted). The Court held that the proper cause requirement was unconstitutional because it prohibited most people from obtaining a gun-carry permit. Id. at 2138, 2156.

In so holding, the Court adopted a textual analysis that requires courts to look to the text of the Second Amendment and "the Nation's historical tradition

12

of firearm regulation."  Id. at 2130.  "Only if a firearm regulation is consistent with this Nation's historical tradition may a court conclude that the individual's conduct falls outside the Second Amendment's 'unqualified command.'"  Id. at 2126 (quoting Konigsberg v. State Bar of Cal., 366 U.S. 36, 50 n.10 (1961)). Accordingly, because "the Constitution presumptively protects [individual conduct]" covered by "the Second Amendment's plain text," the government must justify its regulation of that conduct by establishing "not simply . . . that the regulation promotes an important interest," but that "the regulation is consistent with this Nation's historical tradition of firearm regulation."  Ibid.

Focusing on New York's "proper-cause requirement," the Court held that provision of New York's gun permitting regime was unconstitutional.  Id. at 2138, 2156.  In making that ruling, the Court found that requirement was not justified by an "American tradition."  Id. at 2138, 2156.  The Court also noted that New Jersey had a similar restriction in its justifiable need provision in N.J.S.A. 2C:58-4(c) (2018).  Id. at 2124 n.2.

In Heller and Bruen the Supreme Court repeatedly emphasized that its holdings were not effectuating a wholesale invalidation of state gun licensing and permit systems.  Bruen, 142 S. Ct. at 2138 n.9; id. at 2157-58 (Alito, J., concurring); id. at 2161-62 (Kavanaugh, J., concurring); Heller, 554 U.S. at 626-

13

27. For example, the Court in <u>Bruen</u> expressly endorsed gun-permitting regimes that contained narrow, objective, and definitive standards to guide officials in determining whether applicants were "in fact, 'law-abiding, responsible citizens,'" including specifically referencing "shall-issue" permitting regimes that "often require applicants to undergo a background check or pass a firearms safety course." <u>Bruen</u>, 142 S. Ct. at 2138 n.9 (quoting <u>Shuttlesworth</u>, 394 U.S. at 151). In that regard, the Court explained:

> To be clear, nothing in our analysis should be interpreted to suggest the unconstitutionality of the [forty-three] States' "shall-issue" licensing regimes, under which "a general desire for self-defense is sufficient to obtain a [permit]." Because these licensing regimes do not require applicants to show an atypical need for armed self-defense, they do not necessarily prevent "law-abiding, responsible citizens" from exercising their Second Amendment right to public carry.
>
> [<u>Ibid.</u> (second alteration in original) (citations omitted).]

The concurring opinions of Justices Alito and Kavanaugh similarly stated that the holding in <u>Bruen</u> was limited. Justice Alito explained:

> Our holding decides nothing about who may lawfully possess a firearm or the requirements that must be met to buy a gun. Nor does it decide anything about the kinds of weapons that people may possess. Nor have we disturbed anything that we said in <u>Heller</u> or

14

[McDonald] about restrictions that may be imposed on the possession or carrying of guns.

[Id. at 2157 (Alito, J., concurring).]

Justice Kavanaugh, joined by Chief Justice Roberts, added:

First, the Court's decision does not prohibit States from imposing licensing requirements for carrying a handgun for self-defense. In particular, the Court's decision does not affect the existing licensing regimes—known as "shall-issue" regimes—that are employed in [forty-three] States.

. . . .

Likewise, the [six] States including New York [and New Jersey] potentially affected by today's decision may continue to require licenses for carrying handguns for self-defense so long as those States employ objective licensing requirements like those used by the [forty-three] shall-issue States.

Second, as Heller and McDonald established and the Court today again explains, the Second Amendment "is neither a regulatory straightjacket nor a regulatory blank check." Properly interpreted, the Second Amendment allows a "variety" of gun regulations.

[Id. at 2161-62 (Kavanaugh, J., concurring) (citations omitted).]

B.    New Jersey's Gun Permit Scheme.

For over 100 years, New Jersey has regulated the carrying of firearms outside the home. See Siccardi v. State, 59 N.J. 545, 553 (1971) (noting that the

15

Legislature had regulated the carrying of guns "[a]s early as 1882").  Beginning in 1905, New Jersey required private citizens seeking to carry a concealed firearm to have a permit.  See L. 1905, c. 172.

An applicant seeking a gun-carry permit must follow a two-step process.  First, the applicant must apply to either the local chief of police or the superintendent of the State Police.  N.J.S.A. 2C:58-4(c).  In 2019, the application required biographical information and the endorsement of "three reputable persons who ha[d] known the applicant for at least three years . . . and who . . . certif[ied] . . . that the applicant is a person of good moral character and behavior."  N.J.S.A. 2C:58-4(b) (2018).

In addition, an applicant must satisfy certain criteria.  N.J.S.A. 2C:58-3 and -4.  An applicant must "not [be] subject to any of the disabilities set forth in [N.J.S.A. 2C:58-3(c)]," which consider the applicant's age, mental and physical health, criminal history, and potential danger to public safety.  N.J.S.A. 2C:58-4(c); see also N.J.S.A. 2C:58-3(c).  The applicant must also demonstrate "familiar[ity] with the safe handling and use of handguns," evidenced by certified completion of a training course, submission of scores, or passage of a test.  N.J.S.A. 2C:58-4(c); see also N.J.A.C. 13:54-2.4(b) and (c).  In 2019, an

applicant also had to establish a "justifiable need to carry a handgun" based on an "urgent necessity for self-protection." N.J.S.A. 2C:58-4(c) (2018).

Second, the chief of police or superintendent conducts a background check, including interviews of the applicant and persons endorsing the application. N.J.S.A. 2C:58-4(c). If the application is denied, the applicant can request a hearing in the Superior Court. N.J.S.A. 2C:58-4(e). An applicant dissatisfied with the decision of the Superior Court can appeal the decision "in accordance with law and the rules governing the courts of this State." Ibid. In 2019, if the chief of police or superintendent of the State Police approved the application, the applicant also had to submit it to the Superior Court for review. N.J.S.A. 2C:58-4(d) (2018). If the Superior Court denied the application, the applicant could appeal that denial. Ibid.

On June 24, 2022, the day after the decision in Bruen was issued, the New Jersey Attorney General issued Law Enforcement Directive No. 2022-07, which directed that New Jersey would no longer require applicants to show a justifiable need for a gun-carry permit. The directive also instructed law enforcement agencies to consider all other mandatory requirements for obtaining a gun-carry permit before issuing one. Off. of the Att'y Gen., Law Enf't Directive No. 2022-

07, <u>Directive Clarifying Requirements for Carrying of Firearms in Public</u> 1-2 (June 24, 2022).

Six months later, in December 2022, the Legislature passed, and the Governor signed, a law revising the gun-permitting scheme to formally eliminate the justifiable need requirement and to revise other requirements. <u>See</u> <u>L.</u> 2022 <u>c.</u> 131. The new law did not change the requirement that a person obtain a permit before lawfully carrying a gun in public. <u>See</u> <u>id.</u>; N.J.S.A. 2C:39-5(b). Among other revisions, the new law provides that an applicant for a gun-carry permit must now be endorsed by four reputable people who certify that the applicant "has not engaged in any acts or made any statements that suggest the applicant is likely to engage in conduct, other than lawful self-defense, that would pose a danger to the applicant or others." <u>L.</u> 2022 <u>c.</u> 131, § 3. The new law also requires the applicant to obtain liability insurance to carry a gun in public. <u>Id.</u> §§ 3, 4.

C. Defendants' Lack of Standing.

A defendant may raise a defense that the crime charged in an indictment or accusation "is based on a statute or regulation . . . which is unconstitutional or invalid in whole or in part." <u>R.</u> 3:10-2(d). To make that challenge, however, the defendant must have standing to raise the constitutional objection. <u>State v.</u>

Saunders, 75 N.J. 200, 208-09 (1977). Accordingly, the defendant "must show sufficient injury before his [or her challenge] will be heard." State v. Varona, 242 N.J. Super. 474, 487 (App. Div. 1990). "Th[is] rule limits a criminal defendant to constitutional claims related to his [or her] own conduct [and] rests on the principle that legislative acts are presumptively valid and will not be overturned on the basis of hypothetical cases not actually before the court." Saunders, 75 N.J. at 208-09.

Generally, to establish standing to challenge an allegedly unconstitutional permit statute, the challenger must have applied for a permit or license under the statute. See, e.g., United States v. DeCastro, 682 F.3d 160, 164 (2d Cir. 2012); Westfall v. Miller, 77 F.3d 868, 872-73 (5th Cir. 1996); Kendrick v. Bruck, 586 F. Supp. 3d 300, 308 (D.N.J. 2022). Nevertheless, there is a recognized exception to the submission requirement if the challenger can "make a substantial showing that submitting to the government policy would [have been] futile." Bruck, 586 F. Supp. 3d at 308 (citing Ellison v. Am. Bd. of Orthopedic Surgery, 11 F.4th 200, 206 (3d Cir. 2021)); see also DeCastro, 682 F.3d at 164; Jackson-Bey v. Hanslmaier, 115 F.3d 1091, 1096 (2d Cir. 1997).

Neither defendant in these appeals applied for a permit to carry a gun. Wade's counsel submitted a certification representing that Wade had no other

19

disqualifying factors and that he would have qualified to receive a permit but for the justifiable need requirement. Stringer and his counsel did not submit a certification concerning Stringer's qualifications for a permit.

Initially, we point out that neither Stringer nor Wade has established the factual basis for challenging New Jersey's gun-permit statutes. Stringer has provided no factual basis whatsoever. The certification submitted by Wade's counsel is not based on counsel's personal knowledge; rather, it is based on information received from his client and, therefore, is insufficient to establish facts in dispute. See R. 1:6-6; see also DeCastro, 682 F.3d at 164 (explaining that defendant's reliance on the "hearsay statement of an unidentified police desk officer" was insufficient to make a substantial showing of futility).

Even if we accept the certification of Wade's counsel, it does not establish that Wade would have qualified for a gun-carry permit excluding the justifiable need requirement. To receive a permit, Wade would have been required to demonstrate that he was "thoroughly familiar with the safe handling and use of handguns." N.J.S.A. 2C:58-4(c) (2018). Moreover, he would have had to submit certifications from "three reputable persons who ha[d] known [him] for at least three years" and who certified that he was "a person of good moral character and behavior." N.J.S.A. 2C:58-4(b) (2018). Nothing in the record

20

establishes that Wade would have been able to comply with those requirements. Consequently, the record does not reflect that it would have been futile for Wade to have applied for a permit even in the absence of the justifiable need provision.

The insufficient record supporting defendants' constitutional challenge illustrates why a motion to dismiss criminal charges is not the proper venue for demonstrating that defendants would have been granted a gun-carry permit but for the justifiable need requirement. If defendants had applied for gun-carry permits, there would be a complete record of why they were not granted the permits. In other words, we would not be left to speculate that defendants were denied the permits because of the justifiable needs requirement.

Moreover, law-abiding citizens are not free to ignore a statute and presume that they would have been granted a permit but for one potentially invalid provision of a permit statute. See Borough of Collingswood v. Ringgold, 66 N.J. 350 (1975). In Ringgold, defendants challenged their municipal-court convictions for engaging in door-to-door solicitations without a permit. Id. at 354, 364. They contended that the ordinance requiring the permit was unconstitutional. Id. at 364. The ordinance permitted the chief of police to deny registrations in certain circumstances but did not set forth the standard or principle the chief should use in deciding whether to grant or deny a permit. Id.

21

at 366-67.  The Court held that the provision granting the chief discretion to deny a permit was unconstitutional but concluded that the remainder of the ordinance was valid.  Id. at 367, 371.  The Court then affirmed defendant's convictions explaining that the ordinance was "not a model of clarity," but was "sufficient on its face so that it could not properly be ignored with impunity by these defendants."  Id. at 364.

Defendants contend that their challenge to the facial constitutionality of N.J.S.A. 2C:58-4 (2018) "is another basis to find that [they have] standing despite never having applied for a permit."  They rely on cases concerning the First Amendment and argue that a person faced with a facially invalid licensing law can disregard the law and contest its validity if they are charged with violating it.  See Shuttlesworth, 394 U.S. at 151; Staub, 355 U.S. at 319; Lovell, 303 U.S. at 452.

We reject that argument.  No New Jersey decision or federal decision addressing New Jersey's gun-permit statutes has held that a defendant has standing to challenge the permit statutes without first having applied for a permit.  Courts from other jurisdictions have looked at First Amendment jurisprudence in analyzing Second Amendment cases, but generally those courts have not incorporated wholesale the application of First Amendment law to a

22

Second Amendment analysis.  See Ass'n of N.J. Rifle & Pistol Clubs v. Att'y Gen. N.J., 910 F.3d 106, 122 n.28 (3d Cir. 2018) (explaining that the United States Court of Appeals for the Third Circuit has "consulted First Amendment jurisprudence" but has "not wholesale incorporated it into the Second Amendment").  Indeed, "[w]hile First Amendment cases have permitted standing for plaintiffs who have not sought permits, Second Amendment cases have not."  Bruck, 586 F. Supp. 3d at 309 (collecting relevant cases).  We similarly decline to apply wholesale First Amendment caselaw to a Second Amendment analysis.  In short, defendants' and the trial court's reliance on First Amendment jurisprudence to support their claim of standing was misplaced.

D.      Whether the "Justifiable Need" Provision Could Be Severed.

The holding and analysis in Bruen make it clear that the justifiable need provision in N.J.S.A. 2C:58-4(c) (2018) is unconstitutional under the Second and Fourteenth Amendments.  Indeed, the State concedes that point.  Therefore, even if defendants had standing to make a constitutional challenge, the question becomes whether the justifiable need provision was severable.

When a provision in a statute is declared unconstitutional, the remaining "provision[s] shall, to the extent . . . [they are] not unconstitutional . . . be enforced and effectuated."  N.J.S.A. 1:1-10.  Accordingly, courts can "save an

23

enactment that otherwise would be constitutionally doomed" by "sever[ing] the offending portion" of the statute.  State v. Natale, 184 N.J. 458, 485-86 (2005). "Severability is a question of legislative intent."  Affiliated Distillers Brands Corp. v. Sills, 56 N.J. 251, 265 (1970).  In that regard, the New Jersey Supreme Court has explained:

> The governing principle is whether it can be fairly concluded that the Legislature designed the statute to stand or fall as a unitary whole.  In reaching this conclusion, [a court] must determine whether the objectionable feature can be excised without substantial impairment of the principal object of the statute.  An entire statute will not be invalidated when one clause is found to be unconstitutional unless that clause is so intimately interconnected with the whole that it can be reasonably said that the Legislature would not have enacted the statute without the offending clause.
>
> [Ibid. (citations omitted).]

In other words, we can sever a statutory provision "where the invalid portion is independent and the remaining portion forms a complete act within itself."  Inganamort v. Borough of Fort Lee, 72 N.J. 412, 423 (1977).  Whether a statute contains a severability clause is not determinative.  See id. at 422; State by McLean v. Lanza, 27 N.J. 516, 527 (1958).

In 2019, when defendants were charged, New Jersey's gun-permit statutes were not dependent on the justifiable need provision set forth in N.J.S.A. 2C:58-

24

4(c) (2018). The rest of that provision, as well as N.J.S.A. 2C:58-3 (2016), described other criteria that were independent from, and served purposes separate from, the justifiable need requirement. For example, in 2019, someone seeking a permit to carry a handgun had to demonstrate that he or she was mentally and physically capable of handling a handgun and was not a potential danger to the public. See N.J.S.A. 2C:58-4(c) (2018); N.J.S.A. 2C:58-3(c) (2016). An applicant also had to demonstrate that he or she had completed a training course in the safe handling and use of handguns. N.J.A.C. 13:54-2.4(b) and (c). Consequently, the Legislature designed the gun-permit statutes to address several safety concerns. Accordingly, we construe the gun-permit statutes as they existed in 2019 not to have been dependent on the justifiable need provision.

Indeed, the Legislature made that statutory construction clear when, six months after Bruen was issued, it amended various gun-permit statutes, including N.J.S.A. 2C:58-4. The Legislature deleted the justifiable need provision but left in and revised various other criteria for obtaining a permit to carry a gun in New Jersey. In those amendments, the Legislature also revised New Jersey's gun-permitting scheme to become a shall-issue regime. In that regard, N.J.S.A. 2C:58-3(c), now states that a person "shall not be denied a

permit to purchase a handgun or a firearms purchaser identification card, unless" that person has certain disqualifying criteria.

Moreover, following Bruen, we upheld the constitutionality of the "public health, safety or welfare," requirement for the issuance of a firearms purchaser identification card or handgun purchase permit set forth in N.J.S.A. 2C:58-3(c)(5). In re M.U.'s Application for a Handgun Purchase Permit, 475 N.J. Super. 148, 163, 193-94 (App. Div. 2023). Accordingly, we have already held that, consistent with Heller and Bruen, New Jersey can continue to regulate who can purchase and carry a handgun in public so long as those regulations are consistent with the text of the Second Amendment and our Nation's historical tradition of firearm regulation. In M.U., we construed the 2022 amendments to the gun-permit statutes to be prospective, and not to apply retroactively. Id. at 195. Nevertheless, those amendments demonstrate that the Legislature intended to enforce the valid provisions of the statutes regulating guns if any provision was found to be unconstitutional.

The Supreme Court's jurisprudence on the Second Amendment makes clear that carrying guns in public can still be regulated and subject to a permit requirement. Consequently, at a minimum, New Jersey's gun-permit statutes were and continue to be constitutional in requiring background checks to

26

confirm that the applicant is not a convicted felon or does not have a mental disability and to ensure that the applicant has reasonable training in the safe handling of guns. See Bruen, 142 S. Ct. at 2138 n.9; id. at 2161-62 (Kavanaugh, J., concurring); Heller, 554 U.S. at 626-27. In short, N.J.S.A. 2C:39-5(b)(1) was constitutional and enforceable at the time of defendants' arrest.

IV.

In summary, we hold that defendants did not have standing to challenge the gun permit statutes because neither defendant had applied for a handgun-carry permit. In addition, having considered the merits of defendants' constitutional challenge, we hold that the justifiable need requirement in N.J.S.A. 2C:58-4(c) (2018) was severable and the remaining provisions of N.J.S.A. 2C:58-4 (2018), as well as N.J.S.A. 2C:39-5(b)(1), were constitutional and enforceable.

Reversed and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-2377-22